Argued and submitted March 11, 1999, affirmed May 31, 2000

In the Matter of
Amanda Johnson, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

Amanda JOHNSON,
*Appellant.*

(8905-81243A; CA A98183)

7 P3d 529

Kathryn G. McNannay argued the cause for appellant. With her on the brief was Bertoni & Todd.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Child challenges the juvenile court's dispositional order committing child to the custody of the Oregon Youth Authority (OYA) for placement at a state training school for five years. Child contends that it was error under ORS 419C.501 (1997)[1] to commit her to OYA custody for a period of time that is greater than the maximum period of time authorized by the sentencing guidelines if the act had been committed by an adult. The only issue raised is a legal one, and we limit our review to errors of law. *State ex rel Juv. Dept. v. Cook*, 138 Or App 401, 403, 909 P2d 202 (1996), *aff'd on other grounds* 325 Or 1, 932 P2d 547 (1997). We affirm.

In 1996 and 1997, child was adjudicated on three petitions and found to be within the juvenile court's jurisdiction for acts that would constitute crimes if committed by an adult. Those acts were committed when child was 13 and 14 years old. The court's disposition of each of those petitions was probation. Child later violated the conditions of her probation and admitted to the allegations contained in three subsequent petitions. The court continued her probation. In April 1997, a petition was filed, alleging that child had again violated the terms of her probation.[2] In May, child admitted to violating the terms of her probation, which both child and the state agree was the equivalent of a Class C felony. The juvenile court referee revoked probation, committed child to the custody of OYA, and authorized placement for her at a state training school for an indeterminate period of up to five years. On rehearing, a juvenile court judge affirmed the referee's order. *See* ORS 419A.150(7), (8).

■■ Child argues only that ORS 419C.501, as a matter of law, prohibits the five-year duration of her disposition. That statute provides:

---

[1] ORS 419C.501 (1997) was amended by Oregon Laws 1999, chapter 964, section 1. Unless otherwise specified, our references to ORS 419C.501 cite the 1997 version of the statute.

[2] The basis for that petition was child's admission to committing an act that would have constituted a misdemeanor assault if committed by an adult.

"The duration of any disposition made pursuant to this chapter shall be fixed by the court and may be for an indefinite period. Any placement in the legal custody of the State Office for Services to Children and Families or the Oregon Youth Authority under ORS 419C.478 shall be for an indefinite period. However, in cases under ORS 419C.005, *the period of any disposition made pursuant to this chapter shall not exceed the maximum period of institutionalization or commitment authorized if the act had been committed by an adult.* The period of any disposition shall not extend beyond the date on which the youth offender becomes 25 years of age." (Emphasis added.)

The state contends that the "maximum period of institutionalization or commitment authorized if the act had been committed by an adult" is determined by consulting the statute that defines the maximum sentence for a particular crime or offense. ORS 161.605[3] classifies crimes into separate sentencing categories and establishes the "maximum term of an indeterminate sentence of imprisonment" for each of the felonies listed. The state argues that, because ORS 161.605(3) provides that the maximum sentence for a Class C felony is five years, child's disposition for up to five years was permitted.

Child contends that the phrase, "maximum period of institutionalization or commitment authorized if the act had been committed by an adult," limits the juvenile court's discretion in ordering the duration of a disposition to the maximum incarceration period set out under the sentencing guidelines for a similarly situated adult. In other words, child argues that the "maximum period of institutionalization or commitment authorized if the act had been committed by an adult" is determined by consulting the sentencing guidelines for a similarly situated adult. The guidelines provide for

---

[3] ORS 161.605 provides, in part:

"The maximum term of an indeterminate sentence of imprisonment for a felony is as follows:

"(1)  For a Class A felony, 20 years.

"(2)  For a Class B felony, 10 years.

"(3)  For a Class C felony, 5 years.

"(4)  For an unclassified felony as provided in the statute defining the crime."

mandatory, presumptive or departure incarcerative and probationary sentences, as well as mandatory periods of post-prison supervision, ORS 137.010(10); OAR 213-005-0005. The guidelines also take into account the seriousness of the crime committed, OAR 213-004-0002. Finally, the guidelines consider the criminal history of the offender, OAR 213-004-0006.

ORS 137.669 supports child's argument. That statute provides that the guidelines "shall control the sentences for all crimes committed after the effective date of such guidelines." Child does not dispute that, before enactment of the sentencing guidelines, the limitation in ORS 419C.501, in a case like hers, was determined by reference to ORS 161.605. *See State ex rel Juv. Dept. v. Chapter*, 68 Or App 110, 118, 681 P2d 1171 (1984) (under predecessor statute to ORS 419C.501, court would have referred to the relevant adult indeterminate sentencing statute). Indeed, both ORS 161.605[4] and the operative language at issue in ORS 419C.501 [5] were first enacted in 1971. However, child contends that, after the enactment of the guidelines in 1989, the length of any disposition is now determined by reference to those guidelines. Child claims, and the state does not dispute, that, under the guidelines for a similarly situated adult, the maximum commitment period after probation revocation is six months, not five years. OAR 213-010-0002 (1997).

■ The only issue on appeal, therefore, is one of statutory construction. Our role is to ascertain the legislature's intent in using the phrase "the period of any disposition made pursuant to this chapter shall not exceed the maximum period of institutionalization or commitment authorized if the act had been committed by an adult." We apply the familiar methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and first examine the text and statutory context of the statute. *Id.* If,

---

[1] Or Laws 1971, ch 743, § 74.

[5] Oregon Laws 1971, chapter 571, section 1, amended *former* ORS 419.511, *repealed by* Oregon Laws 1993, chapter 33, section 373, to add the relevant language. The provisions of *former* ORS 419.511 were reenacted by Oregon Laws 1993, chapter 33, section 246, and codified as ORS 419C.501.

after that examination, the meaning of that phrase is ambiguous, we may refer to legislative history. *Id.* We ultimately conclude that, after examining the text and statutory context of ORS 419C.501, the legislature intended that juvenile dispositions of indeterminate periods of custody be determined by the maximum adult, indeterminate periods of incarceration, not by determinate sentences. Accordingly, we conclude that the legislature intended for ORS 161.605 to control the maximum term for child's disposition in this case.

The conclusion in this case ultimately turns on what the legislature meant by the phrase "the maximum period * * * authorized [for an] act * * * committed by an adult." ORS 419C.501. It is crucial to understand the kind of juvenile dispositions being limited by this statute, as well as the kind of adult sentences by which the legislature intended to limit those dispositions. We interpret ORS 419C.501 as providing that any disposition of an *indeterminate term of custody* may not exceed the "maximum period" of *incarceration* "authorized if the act had been committed by an adult."

First, ORS 419C.501 plainly requires that "any disposition made pursuant to this chapter"[6] that places a child in the legal custody of the SOSCF or OYA under ORS 419C.478 must be for an indefinite period,[7] but not to extend beyond the date a child turns 25 years of age. Both parties agree that, as relevant to this case, "indefinite" is synonymous with the term "indeterminate," as commonly used in adult sentencing statutes, and means that the term or amount of punishment is set within certain limits but not determined exactly at the time of sentencing. *See Webster's Third New Int'l Dictionary*, 1148 (unabridged ed 1993)

---

[6] The dispositions listed in chapter 419C include probation, restitution, personal service, community service, mental health treatment, and custody to OYA and to State Office for Services to Children and Families (SOSCF). However, although termed broadly, "any disposition," does not here refer to orders of probation, because ORS 419C.504 specifically provides that "*[n]otwithstanding ORS 419C.501*, [the court] may place the youth offender on probation to the court for a period not to exceed five years."

[7] ORS 419C.478 authorizes commitment of a child to the legal custody of SOSCF or OYA, "in addition to probation or any other dispositional order," when child has been found within the jurisdiction of the juvenile court under ORS 419C.005. By implication, probation and noncustodial dispositional orders do not need to be for an indefinite period, but may be definite. ORS 419C.501.

(defining "indeterminate"). The plain meaning of "indefinite" includes "having no exact limits: indeterminate in extent or amount: not clearly fixed ‹sentenced to an  ;  prison term› * * *." *Id.* at 1147. Accordingly, we agree, as relevant here, that "indefinite" refers to dispositions *within* or *up to* certain time limits.

■     Second, the terms "institutionalization" and "commitment" are not defined in the statute. Both ORS 137.669 and ORS 161.605 define "sentences" for "crimes" and "felonies." Juvenile adjudications are not "crimes." ORS 419C.400; *see also State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 575, 857 P2d 842 (1993) (juvenile delinquency proceedings are not criminal prosecutions); *State v. Thompson*, 166 Or App 370, 382, 998 P2d 762 (2000) (juvenile delinquency proceeding is not a criminal proceeding). They do not result in felony convictions, nor are juvenile adjudications "sentences." *State v. Trice*, 146 Or App 15, 20-21, 933 P2d 345, *rev den* 325 Or 280 (1997). Our reference to those statutes is not triggered by those labels, nor is our reference here intended to so label juvenile adjudications and dispositions. Here, we are concerned with an act equivalent to a Class C felony probation violation. We agree that periods of incarceration qualify as institutionalization or commitment and that the sentencing requirements under ORS 137.669 and ORS 161.605 define the length of incarceration relevant to the offense in this case, *i.e.*, a felony if committed by an adult.[8]

Within that context, we focus on determining how the legislature intended to define the "maximum period * * * authorized [for an] act * * * committed by an adult." Both the state's and child's interpretations are facially plausible. The "maximum term" provided for in ORS 161.605 plausibly defines the "maximum period" in ORS 419C.501. Similarly, the legislature's intent that the guidelines "shall control * * * sentences," including their duration, also plausibly can define the "maximum period" in ORS 419C.501.

---

[8] ORS 137.669 and ORS 161.605 are not the only statutes that may define maximum periods of incarceration pursuant to ORS 419C.501. Because the language in ORS 419C.501 is general, not specific, *see* ORS 419C.501, the relevant statute defining the incarcerative term may vary, depending on the particular act.

Indeed, we have before found it plausible to interpret both the sentencing guidelines and ORS 161.605 as facially *authorizing* the *maximum period* of *sentences. See State v. Haydon,* 116 Or App 347, 350-53, 842 P2d 410 (1992). In *Haydon,* we considered the phrase "maximum sentence otherwise provided by law in * * * cases [of repeat offenders]" in ORS 137.635. *Id.* at 350. There, we concluded that the phrase was to be "construed in conjunction with the guidelines legislation," not ORS 161.605. *Id.* at 350, 352.

What is evident in the text of the statutes, and ultimately persuades us that ORS 161.605 controls in this instance, is the legislature's clear distinction between determinate sentences as a whole and indeterminate incarcerative terms. As discussed above, ORS 419C.501 provides that dispositions for acts bringing the child within the jurisdiction of the juvenile court that commit a child to OYA custody must be for an indefinite, *i.e.,* indeterminate, term. That indeterminate term may not exceed the maximum incarcerative term *authorized* for that act by the adult sentencing statutes. Simply stated, only ORS 161.605 authorizes and defines "indeterminate" incarcerative terms. ORS 137.669 and the sentencing guidelines identify determinate sentences. We conclude that the legislature intended to define the juvenile disposition by the corresponding adult sentence that is like in kind, *i.e.,* indeterminate periods of incarceration.

The context supports that reading. The juvenile code's indeterminate sentencing scheme is much more consistent with the indeterminate sentencing scheme embodied in ORS 137.120 and ORS 161.605 than with the determinate sentencing scheme embodied in the sentencing guidelines. For example, with indeterminate sentencing, the court generally had discretion, after considering the individual circumstances of the case, "to fix a maximum term of imprisonment within the legislatively established limits." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 74, 72 (July 1970). Under the indeterminate sentencing scheme, the availability and periods of parole were also generally discretionary within certain limitations. At the time the indeterminate sentencing scheme was adopted, it was premised primarily on "principles of reformation." Or Const, Art I, § 15 (1995).

Similarly, juvenile courts in Oregon historically have been "concerned with rehabilitation, not punishment." *Reynolds*, 317 Or at 574. Indeed, their purpose was "to approach each child's alleged delinquency as an equitable problem rather than as a criminal problem." *Id.* at 573. To that end, the juvenile court was entrusted with a wide array of powers to effectuate the best interests of a child. *Id.* 573-74. Juvenile courts, necessarily, had to have been bestowed with discretionary power to implement the proper tools to achieve this end.

The sentencing guidelines through ORS 137.669 generally control "the *sentences* for all crimes."[9] (Emphasis added.) While those "sentences" do implement rehabilitative goals, their primary objective is "to punish each offender appropriately, and to insure the security of the people in person and property * * *." OAR 213-002-0001(1). To achieve this objective, the guidelines control sentences by severely limiting the trial court's discretion in fashioning a sentence. First, the guidelines sentences provide for mandatory, presumptive terms of incarceration, and the trial court retains only limited discretion to consider mitigating or aggravating factors that would justify departing, within certain limits, from the mandatory presumptive term. In addition, unlike the indeterminate sentencing scheme and the juvenile dispositional scheme, the guidelines provide that, as an integral part of the "*sentence*," the court must impose mandatory periods of post-prison supervision. *State v. Little*, 116 Or App 322, 327, 842 P2d 414 (1992).

Accordingly, unlike the indeterminate sentences under ORS 161.605 and the juvenile dispositions of institutionalization or commitment, the "*sentences* for all crimes" under the guidelines are not limited to terms of incarceration. As a result, we find it unlikely that the legislature would have intended that the solely incarcerative periods in ORS 419C.501 refer to the integrated "sentences" in ORS 137.669.

---

[9] We recognized that, despite the sweeping language of ORS 137.669, the legislature has made specific provision that other statutes, not relevant here, govern the sentences in particular circumstances. *See, e.g.*, ORS 137.700 and ORS 137.717 (mandatory minimum sentences).

Admittedly, the juvenile system is not entirely equitable and rehabilitative, but also contains aspects of punishment. *See In re Gault*, 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967).[10] There is also no doubt that ORS 419C.501 limits the discretion of the juvenile court in ordering terms of dispositions. However, for the reasons outlined above, limiting the juvenile court's discretion by requiring it to consider a particular act in the manner dictated by the sentencing guidelines would seem to be a larger intrusion into the juvenile court's discretion than by requiring it to reference ORS 161.605.

Indeed, it is undisputed that ORS 161.605 was the proper authority for restricting the juvenile court's discretion in a case like this before enactment of the guidelines. We assume that the legislature was aware of that fact and, because it did not amend ORS 419C.501 to prohibit that construction, the legislature agreed to that interpretation, at least until the enactment of the guidelines. The juvenile dispositional scheme is more akin to the indeterminate sentencing scheme in ORS 161.605 than to the determinate sentencing scheme in the guidelines. Therefore, we find it highly unlikely that, in enacting the sentencing guidelines, the legislature silently repealed a prior interpretation of ORS 419C.501. If the legislature intended to change ORS 419C.501, it would have amended that statute. That is especially the ease where the Oregon Criminal Justice Council worked for almost a year and a half to study and submit a list of statutes that should have been amended or repealed in connection with adoption of the guidelines and nevertheless did not amend ORS 419C.501. *See Little*, 116 Or App at 325.

It is true that if child were actually being "sentenced" as an adult, ORS 137.120 would require that the trial court impose the guidelines sentence. ORS 137.120 provides that for felonies committed before November 1, 1989, the court must impose indeterminate sentences, but that for felonies committed, as here, on or after November 1, 1989, the court must impose the guidelines sentence. ORS 137.120(1),

---

[10] The 1995 legislature significantly amended Oregon's juvenile code, explicitly also emphasizing the issues of "personal responsibility [and] accountability." Or Laws 1995, ch 422, § 1a; ORS 419C.001(1).

(2). However, that statute is beside the point. We are not concerned with the legislature's intent in directing the court how to impose sentences on adults but with the legislature's intent in directing the court how to determine dispositions for juveniles. To that end, it directed the court here to ascertain that the indefinite term of custody to OYA not exceed the *authorized* period of institutionalization or commitment, *i.e.,* incarceration, for the equivalent adult offense. ORS 419C.501. ORS 161.605, not ORS 137.669, provides that authority for indeterminate sentences.

Accordingly, the trial court did not "exceed the maximum period of institutionalization or commitment authorized if the act had been committed by an adult" by ordering child to the custody of OYA for a period not to exceed five years.[11]

Affirmed.

---

[11] The 1999 amendment provided, in part, that a juvenile who was found to have committed an act that, if committed by an adult, would be a Class C felony, could be committed to the custody of OYA for a period not to exceed five years. ORS 419C.501(1)(e).