Argued and submitted December 15, 2000, affirmed May 8, 2002

In the Matter of
Antonio Rial, a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

ANTONIO RIAL,
*Appellant.*

9211-837911; A108448 (Control) and A108630
(Cases Consolidated)

46 P3d 217

Caryanne Conner argued the cause and filed the brief for appellant.

Christina M. Hutchins, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

■ Youth appeals from an order of the juvenile court revoking his previously imposed probation, committing him to the custody of the Oregon Youth Authority (OYA) for five years, and recommending placement in a youth correction facility. He argues that the juvenile court erred in requiring that he complete sex offender treatment as a condition of probation, that the record does not support the juvenile court's finding that he violated that condition, and that the maximum period of commitment to OYA based on his violation of the condition was six months. Youth also argues that his trial counsel provided ineffective assistance in various respects. We review the factual basis of the court's revocation order *de novo*, ORS 419A.200(5), and the court's legal determinations for errors of law, *State ex rel Juv. Dept. v. Johnson*, 168 Or App 81, 7 P3d 529 (2000). We affirm.

In October 1997, the state petitioned for juvenile court jurisdiction over youth on the ground that he had committed an act that, if committed by an adult, would constitute robbery in the third degree. ORS 164.395. In December 1997, based on youth's admission to the allegation, the juvenile court entered an order finding that it had jurisdiction over youth. It placed him on probation for one year from the date of the court's order and imposed specified conditions of probation.

In May 1998, the state again petitioned for juvenile court jurisdiction over youth, on the ground that he had committed acts that, if committed by an adult, would constitute three counts of sexual abuse in the third degree, ORS 163.415, and one count of harassment, ORS 166.065. In August 1998, the juvenile court found youth to be within its jurisdiction based on the harassment allegation and dismissed the three sexual abuse allegations. The court, acting through a referee, also ordered that youth undergo a psychosexual evaluation. Youth sought a rehearing on the referee's order that he undergo a psychosexual evaluation; a judge of the juvenile court affirmed the order. *See* ORS 419A.150 (providing that, upon request of a party or on the judge's own motion, a judge of the juvenile court shall rehear a matter heard by a referee).

On October 12, 1998, the juvenile court entered a dispositional order in the harassment case, in which the court placed youth on probation for one year from the date of the order. Youth sought a rehearing on the dispositional order under ORS 419A.150. On November 17, 1998, the court entered an order finding that, "[p]er agreement between [youth's juvenile court counselor], youth, [and] youth's attorney * * *, the parties support combining Robbery III probation w/ newly ordered Harassment probation" and ordering that youth's robbery probation be "combined with" his harassment probation, "with both probations continued until 10-5-00." On November 18, 1998, the court entered an order finding that "youth needs sex offender [treatment] as he is at high risk to offend." It continued his probation to October 5, 2000, and ordered that he complete sex offender treatment.

As pertinent here, youth's juvenile court counselor filed a petition in March 1999 alleging that youth had violated his probation by, among other conduct, "demonstrat[ing] a lack of commitment to sex offender treatment." In April 1999, after a hearing on the petition, the juvenile court ordered that youth enter and successfully complete a secure residential sex offender treatment program. In July 1999, youth's counselor again alleged that youth had violated his probation. The juvenile court heard the matter on August 5, 1999. It ordered that youth serve eight days of detention and that "[t]he next [probation violation] shall result in revocation of probation and commitment to [the MacLaren Youth Correction Facility]."[1]

On October 15, 1999, youth's counselor again filed a probation violation petition, alleging that, on October 13, youth had been "terminated from the secure residential treatment program for continuous physical, verbal and intimidating behavior." On November 3, the juvenile court issued an order after a hearing on the petition, finding that youth had been terminated from the program, that he therefore had not successfully completed the program, that "[t]his

---

[1] The MacLaren Youth Correction Facility formerly was known, and on occasion continues to be referred to, as a "state training school" and as the MacLaren School for Boys. We refer to it by its current statutory designation. ORS 420.005(4).

is a violation of probation," and that youth had been "told on 8/5/99 that the next [probation violation] would result in revocation." The court committed youth to the custody of OYA for five years and recommended placement at a youth correction facility. ORS 419C.478; ORS 419C.495. This appeal followed.

In his first assignment of error, youth contends that the juvenile court erred in several respects in revoking his probation on the ground that he failed to complete sex offender treatment. First, youth contends that the juvenile court lacked statutory authority to impose sex offender treatment as a condition of probation, because neither of the acts on the basis of which the juvenile court found that it had jurisdiction over youth is a sex offense and because the juvenile court made insufficient factual findings supporting its imposition of that condition. Second, youth asserts that the November 3, 1999, revocation hearing was deficient because, contrary to his rights under the Due Process Clause, including his right to notice of the allegations against him, the juvenile court considered facts relating to his termination from the sex offender treatment program that were not alleged in the probation violation petition. He also contends that the court failed to consider mitigating factors relating to his termination from the program. Finally, youth asserts that revocation was improper because, although the juvenile court advised him in August 1999 that his next probation violation would result in revocation, he was in effect revoked for conduct that he engaged in before receiving that warning.

The state responds that youth failed to appeal the dispositional order in which the juvenile court ordered that he undergo sex offender treatment as a condition of probation and that he cannot now collaterally attack that order in this appeal. As to the merits of the court's revocation decision, the state responds that youth failed to demonstrate prejudice arising from any lack of notice regarding the evidence the state introduced at his revocation hearing and that there is evidence supporting the revocation, including evidence of youth's inappropriate behavior in the sex offender treatment program after August 1999 and, more significantly, the fact of his termination from that program.

In reply, youth again asserts that the record does not reflect his continued inappropriate behavior after August 1999. He also replies that the juvenile court was required to exercise discretion in determining whether to revoke his probation and that the court failed to do so, because it believed that it was "required" to commit him to OYA for placement in a youth correction facility.

■　As an initial matter, we agree with the state that, because youth failed at the proper time to challenge the court's November 18, 1998, order imposing sex offender treatment as a condition of his probation, he cannot now do so. *See* ORS 419A.200(3)(c) (establishing the time period for the filing of a notice of appeal).

■　We turn to whether youth's probation was revoked on allegations or evidence about which he received inadequate notice. Youth is correct that he is entitled to the protections of the Due Process Clause in his probation revocation hearing, including adequate notice of the "charges" against him. *See Gagnon v. Scarpelli*, 411 US 778, 786, 93 S Ct 1756, 36 L Ed 2d 656 (1973); *see also* ORS 419C.610 (providing that court may modify any order upon notice and hearing); ORS 419C.613 (notice and a hearing shall be granted in any case where the effect of modifying the court's order will be to "place the youth in an institution or agency").[2] For the following reasons, however, we conclude that youth received constitutionally adequate notice.

As previously stated, the October 15 probation violation petition identified as the "applicable condition[ ] of probation" the requirement that youth "[e]nter and successfully complete the [sex offender treatment program]." It also alleged that the "manner" in which youth violated that condition was his "terminat[ion] from the secure residential treatment program for continuous physical, verbal and intimidating behavior."

At the hearing on the petition, Bruce Janes, the clinical director of the sex offender treatment program, testified that youth was terminated from the program based on his

---

[2] In revoking a youth offender's probation, the juvenile court is, in effect, modifying its dispositional order in the case.

"continuous negative" behaviors that were "undermining the efficacy of the treatment program," including inappropriate talk about "sexual matters"; an attempt by youth to "get by with what he could"; and, while out of the facility on a visit to the home of prospective foster parents, engaging in "high-risk" behavior that was contrary to the "contract" to which youth had agreed regarding that visit.[3] Janes also testified that, in late September 1999, staff learned that, at some time before August 1999, youth had directed intimidating statements and physical conduct at other program participants; the record also includes a copy of an October 1999 written incident report describing youth's conduct, including slapping, kicking, hitting, and name-calling. Youth's juvenile court counselor, Sally Hampshire, testified that youth's prospective foster parents had expressed concerns about youth's understanding of "boundaries and expectations and routines" in the foster home. Hampshire also testified that, in her opinion, it was "questionable at best" whether youth was putting "the knowledge and the education" he was gaining in the program "in action." In his October 15, 1999, "Termination Report," director Janes stated that, after youth was informed in August of the prospect of being terminated from the program, youth "started showing willingness to cooperate with the expectations of the program." Janes also stated, however, that "[o]ther residents continued to struggle with [youth's] implied aggressive and intimidating behaviors" and that youth "made no effort to modulate his behavior; rather, he became more cover[t] and sneaky," he "continued to bully others," and, when confronted, "[he] would rationalize and excuse his behavior." Janes stated that youth "does better with external controls and expectations but there is no evidence of internal motivation to do the right thing."

In summary, the revocation petition identified the successful completion of the treatment program as the "applicable" condition of probation and alleged that youth violated that condition by being terminated from the program for "physical, verbal and intimidating behavior." The evidence presented at the hearing relating to youth's failure to comply

---

[3] The record reflects that, during the visit at issue, youth made numerous telephone calls and received visits from friends rather than interacting with the foster parents. The record does not indicate the date of the visit.

with the requirements of the program in various respects, including his intimidating physical and verbal conduct toward other program participants, his inappropriate conduct during his visit to the home of his prospective foster parents, and his failure generally to internalize the principles of the program, support the claim that youth violated that condition of his probation. All of that evidence was relevant to his termination from the treatment program and thus to the probation violation alleged by the state. We conclude that youth was not revoked from probation on the basis of allegations or evidence about which he lacked adequate notice.

■ On the same record, we also conclude that revocation of youth's probation in November 1999 was not improper by reason of some of the conduct having occurred before his August 1999 probation violation hearing at which the court continued probation. The record demonstrates that, although youth engaged in some or all of his intimidating conduct toward other program participants before August 1999, staff did not learn of that conduct until October 1999. Having learned of the conduct, staff were entitled to rely on it in determining whether to terminate youth from the program. In any event, youth was terminated from the program based at least in part on conduct that occurred after the August hearing. We conclude that the court properly considered all the evidence and based its revocation on the described events, including the termination.

■ We turn to youth's second assignment of error, in which he asserts that the juvenile court failed to make factual findings on the record to support revocation and commitment to a youth correction facility and that it erred in committing him for five years. The state responds that youth failed to raise below any issue relating to the court's factual findings and that, under ORS 419C.411, he therefore cannot raise that issue on appeal. The state also responds that youth stipulated to the combining of his terms of probation for robbery in the third degree and harassment and that a five-year commitment is authorized for the former of those two acts.

We begin with the court's asserted failure to make "findings." ORS 419C.411 provides, in part, that, in determining the disposition in a juvenile delinquency case, the

court "shall consider" enumerated factors, including the manner in which the youth committed the act, the gravity of the results, the need for protection of the victim and the community, whether the youth was held in detention pending adjudication of the act, and the youth's juvenile court record and response to previous court orders, if any. ORS 419C.411(2). The statute also provides that, in imposing a disposition, the court "may consider" other factors, such as the youth's efforts toward rehabilitation, the results of any treatment, and "[a]ny other relevant factors or circumstances raised by the parties."

The statute does not expressly state whether those requirements apply only to the court's initial disposition in the case or also to later, modified dispositions. Even assuming that it applies to both, however, the statute does not expressly require the court to make detailed findings on the record to support its dispositional determination. *Cf.* ORS 420A.203(4)(a) (in the context of "second look" hearings for juveniles convicted in adult court, the court shall order a disposition "after considering *and making findings*" regarding the factors enumerated in that statute) (emphasis added). Also, contrary to youth's argument, ORS 419C.478(3) does not impose such a requirement either. ORS 419C.478 provides for the placement of a youth offender in the custody of OYA *or* the Department of Human Services (DHS). The requirement that the court make findings as to the factors set out in ORS 419C.478(3) (such as a finding that the youth is not amenable to rehabilitation through participation in programs administered by OYA) applies only when the court places a youth in DHS custody. The statute does not require findings to be expressed on the record regarding revocation of probation and commitment to the youth authority for placement in a youth correctional facility, and we decline to insert in the statute what the legislature has omitted. ORS 174.010; *cf. State v. Hart*, 329 Or 140, 145-46, 985 P2d 1260 (1999) (where the applicable statute did not expressly require the trial court to make findings regarding a defendant's ability to make restitution to the victim, the court was enjoined by ORS 174.010 from reading that requirement into the statute).

■       As to whether the court exercised its discretion in considering the evidence, we conclude that it did so. The record indicates that the juvenile court heard extensive evidence and argument relating to youth's conduct after his initial adjudication—particularly, his behavior and progress in the sex offender treatment program, as well as his conduct during the visit to his prospective foster parents. In addition, youth's counsel, the district attorney, and a representative of OYA presented information to the court regarding the availability, following youth's termination from his current treatment program, of other programs and placements. At the conclusion of the hearing, the court commented that "[t]here's no other place right now" for youth to be placed and committed him to OYA custody for placement at a youth correction facility. The record therefore demonstrates that the juvenile court adequately "considered" the relevant factors when it revoked youth's probation and committed him to OYA for placement in a youth correction facility. Nothing else was required.

■       We turn to whether the court lacked authority to commit youth to OYA for a period of five years. Again, youth argues that the condition of probation that he violated—successful completion of the sex offender treatment program—was imposed in relation to his probation on the harassment charge; conversely, he contends that that condition was "never a valid condition of probation" for the charge of robbery in the third degree. He argues that his violation of that condition therefore could not be a basis for terminating his probation on the robbery charge; that the remaining charge, harassment, is a Class B misdemeanor; and that it necessarily follows that the maximum authorized period of "institutionalization or commitment" upon revocation is six months. *See* ORS 419C.501(1)(c); *see also Johnson,* 168 Or App at 91 (maximum period of commitment for an act that if committed by an adult would constitute a crime is the maximum term of imprisonment for such act as stated in ORS 161.605).[4] Thus,

---

[4] We note, however, that the maximum periods set out in ORS 419C.501 apply only to "institutionalization or commitment"; they do not apply to probation orders. Under ORS 419C.504, probation may extend to five years or until the date a youth becomes 23 years of age, regardless of the seriousness of the act.

youth concludes that the court erred in committing him for five years to OYA. The state responds that the trial court did not err, because youth failed to appeal the conditions of probation imposed in regard to his two adjudicated acts and because he stipulated to the "combining" of the separate "terms" of probation imposed for those acts.

Youth's challenge to the court's imposition of a five-year commitment to OYA constitutes an implicit challenge to the court's November 17, 1998, order combining his probations. For purposes of this appeal, we assume without deciding that youth can, in effect, challenge the November 17 order, even though he did not appeal from it.[5]

As previously stated, on November 17, 1998, the juvenile court entered an order finding that, "[p]er agreement between [youth's juvenile court counselor], youth, [and] youth's attorney * * * the parties support combining Robbery III probation w/ newly ordered Harassment probation" and ordering the "Robbery III probation combined with Harassment probation with both probations continued until 10-5-00." By challenging the juvenile court's later order revoking his probation and committing him to OYA for five years, youth necessarily is asserting that the lawful effect of the November 17 order was to cause the two probationary *terms* to run concurrently, with each nevertheless retaining its own associated conditions of probation and permissible duration of commitment upon revocation. *Cf.* ORS 137.123 (in the adult criminal context, a sentence, including a sentence of probation, may be made concurrent with or consecutive to any other sentence). Conversely, youth in effect is

---

[5] *See, e.g., State v. Leathers,* 271 Or 236, 240, 531 P2d 901 (1975) (in adult criminal context, a sentence "must be in conformity with the governing statute; any non-conforming sentence is void for lack of authority and thus totally without legal effect"); *State v. Horsley,* 168 Or App 559, 7 P3d 646 (2000) (trial court has duty to impose sentence in accordance with applicable sentencing provisions). *But see, e.g., State v. Beavers,* 121 Or App 594, 856 P2d 332 (1993) (where the defendant failed to appeal from the order imposing conditions of probation, he could not attack the validity of those conditions on appeal from the order revoking his probation).

asserting that the November 17 order combining his probations could not lawfully have the effect of making the conditions of probation on each adjudicated charge applicable to both charges.

ORS 419C.446 (1997) established the juvenile court's authority to impose conditions of probation.[6] It provided, in part:

"(1) When a youth has been found to be within its jurisdiction, and when the court determines it would be in the best interest and welfare of the youth, the court may place the youth on probation. * * *

"(2) The court may specify *particular requirements to be observed during the probation consistent with recognized juvenile court practice, including but not limited to* restrictions on visitation by the youth's parents, *restrictions on the youth's associates, occupation and activities,* restrictions on and requirements to be observed by the person having the youth's legal custody, requirements that the youth pay any assessment under ORS 137.290, *requirements for visitation by and consultation with a juvenile counselor or other suitable counselor,* requirements to make restitution under ORS 419C.450, requirements of a period of detention under ORS 419C.453, requirements to pay a fine under ORS 419C.459, requirements to pay a supervision fee under ORS 419C.449, requirements to perform community service under ORS 419C.462, or service for the victim under ORS 419C.465, or requirements to submit to blood testing under ORS 419C.473." (Emphasis added.)

Thus, ORS 419C.446 (1997) imposed a general standard for conditions of probation—that they be "consistent with recognized juvenile court practice"—and set out a nonexclusive list of authorized types of conditions. ORS 419C.446 did not, however, expressly state whether, or the extent to which, a particular condition of probation, even if generally of an authorized type, must be related to the particular conduct that brought the youth within the court's jurisdiction in a

---

[6] Amendments to ORS 419C.446 (1997) by the 1999 and 2001 Legislative Assemblies are not material here. Or Laws 1999, ch 97, § 5; Or Laws 2001, ch 884, § 8.

particular case. *Cf.* ORS 419B.343(1) (in the dependency context, the agency's plan for reunification of a family must "bear a reasonable relationship to the jurisdictional findings that brought the child within the court's jurisdiction"); ORS 137.540(2) (in the adult criminal context, in addition to general conditions of probation, the court may impose any special conditions of probation that are "reasonably related to the crime of conviction or to the needs of the defendant for the protection of the public or reformation of the offender, or both"). Some of the conditions expressly authorized by ORS 419C.446 (1997)—such as the requirement that the youth "make restitution" or that the youth perform "service for the victim"—appear to be related to the conduct that gave rise to the particular adjudication. However, other expressly authorized conditions—such as "requirements for visitation by and consultation with a juvenile counselor or other suitable counselor"—relate to the psychological or other needs of the youth himself or herself, and not merely or necessarily to the youth's conduct that gave rise to the adjudication. Thus, the text of ORS 419C.446 (1997) indicates that, in establishing conditions of probation, the court is not restricted to conditions that narrowly and directly relate to the conduct that led to the adjudication of jurisdiction.

The context of ORS 419C.446 (1997) supports that conclusion. First, as noted, ORS 419C.446 (1997) refers to "recognized juvenile court practice." Although the provision does not itself indicate the precise nature of such "practice," ORS 419C.001(1) sets out the foundational purposes and principles of the juvenile justice system:

> "The Legislative Assembly declares that in delinquency cases, the purposes of the Oregon juvenile justice system from apprehension forward are to protect the public and reduce juvenile delinquency and to provide fair and impartial procedures for the initiation, adjudication and disposition of allegations of delinquent conduct. The system is founded on the principles of personal responsibility, accountability and reformation within the context of public safety and restitution to the victims and to the community. The system shall provide a continuum of services that emphasize prevention of further criminal activity by the

use of early and certain sanctions, reformation and rehabilitation programs and swift and decisive intervention in delinquent behavior. The system shall be open and accountable to the people of Oregon and their elected representatives."

The legislature's use of the terms "continuum of services" and "rehabilitation programs" in ORS 419C.001(1) suggests that it intended for the juvenile justice system to address juvenile delinquency in a broad and holistic manner, rather than by focusing on a youth's particular conduct that gave rise to the youth's adjudication. *See Webster's Third New Int'l Dictionary*, 1914 (unabridged ed 1993) (defining "rehabilitation" in part as "the process of restoring an individual (as a convict * * * ) to a useful and constructive place in society"). Similarly, ORS 419C.001(1) refers to the "prevention of further criminal activity" generally, rather than prevention of further criminal conduct of the particular type that brought a youth within the court's jurisdiction. In short, ORS 419C.001(1) supports the understanding that, in determining the appropriate disposition in a case, including the conditions of probation, the court is not restricted under ORS 419C.446 to sanctions and programs that are narrowly and directly related to the conduct for which the youth was adjudicated delinquent.

Also, ORS 419C.411 provides the factors that the juvenile court must consider in determining the disposition of a case and provides further context for ORS 419C.446 (1997). As pertinent here, in determining whether to impose probation, commitment, or some other disposition, the court must consider under ORS 419C.411:

"(a) The gravity of the loss, damage or injury caused or attempted during, or as part of, the conduct that is the basis for jurisdiction under ORS 419C.005;

"(b) Whether the manner in which the youth engaged in the conduct was aggressive, violent, premeditated or willful;

"* * * * *

"(d) The immediate and future protection required by the victim, the victim's family and the community; and

"(e) The youth's juvenile court record and response to the requirements and conditions imposed by previous juvenile court orders."

Under ORS 419C.411(3), the court may also consider:

"(a)  Whether the youth has made any efforts toward reform or rehabilitation or making restitution;

"(b)  The youth's educational status and school attendance record;

"(c)  The youth's past and present employment;

"(d)  The disposition proposed by the youth;

"(e)  The recommendations of the district attorney and the juvenile court counselor and the statements of the victim and the victim's family;

"(f)  The youth's mental, emotional and physical health and the results of the mental health or substance abuse treatment; and

"(g)  Any other relevant factors or circumstances raised by the parties."

Thus, as in ORS 419C.446 (1997), some of the factors that the court must consider in determining the proper disposition in the case—such as the gravity of the loss arising out of the youth's conduct—clearly relate to the specific conduct resulting in that adjudication. By contrast, at least one factor that the court is required to consider—"[t]he youth's juvenile court record and response to the requirements and conditions imposed by previous juvenile court orders"—is not, by its terms, limited to previous court orders *in that case*, and thus appears to authorize the court to impose, as a condition of probation, any requirement that is appropriate in view of conditions imposed by the court in other cases. In addition, several factors that the court *may* consider—such as the youth's "mental, emotional and physical health"—clearly pertain to the youth and not to any specific conduct. Finally, ORS 419C.411(3)(g) broadly authorizes the court to consider "[a]ny other relevant factors or circumstances." In sum, our review of the text and context of ORS 419C.446 (1997) persuades us that a juvenile court is not restricted to imposing conditions of probation that are narrowly and directly related to the conduct that gave rise to the finding of jurisdiction in that case but, rather, may impose any condition that fulfills the juvenile justice system's purposes,

including conditions intended to facilitate the rehabilitation of the youth.

In light of that interpretation of the applicable statutes, it follows that the court's November 17, 1998, order in this case—stating that youth's probation for robbery in the third degree was "combined with" his probation for harassment—lawfully could have the effect of making the conditions of probation in each of youth's adjudications applicable to both. It then also follows that, when youth violated the condition of probation requiring that he successfully complete a secure residential treatment program, the court was authorized to impose a period of commitment up to and including the period of commitment authorized for the more serious of the adjudicated acts, namely, a period of five years for his conduct constituting robbery in the third degree. We hold that the trial court did not err in revoking youth's combined probations and committing him to OYA for a period of five years.

■ ■ We turn to youth's third assignment of error, in which he asserts that his juvenile court counsel provided ineffective assistance in various respects. *See State ex rel Juv. Dept. v. Geist*, 310 Or 176, 185, 796 P2d 1193 (1990) (stating, in the context of a parental rights termination proceeding, that a statutory right to counsel includes a right to "adequate" counsel); *State ex rel Juv. Dept. v. Balderas*, 172 Or App 223, 227-28, 18 P3d 310 (2000) (extending reasoning of *Geist* to proceedings under ORS chapter 419C). *Cf. Gorham v. Thompson*, 332 Or 560, 564, 34 P3d 161 (2001) (in the adult criminal context, in order to prevail on a claim of inadequate assistance of trial counsel, a post-conviction petitioner must demonstrate by a preponderance of the evidence that trial counsel failed to exercise reasonable professional skill and judgment and that the petitioner suffered prejudiced as a result) (citing *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991)).

Specifically, youth asserts that counsel was ineffective in not appealing from the dispositional order requiring, as a condition of probation on the harassment charge, that he complete sex offender treatment. He also asserts that counsel

was ineffective by reason of advising him to stipulate to the combining of his probations on the robbery and harassment charges. Finally, youth contends that counsel provided ineffective assistance when, on revocation of youth's probation based on his failure to complete the treatment program, counsel failed to assert that the juvenile court was authorized to commit youth for a maximum of six months. The state responds that youth cannot challenge his counsel's adequacy on direct appeal but must instead avail himself of the statutory procedure provided in ORS 419C.610, providing that the juvenile court "may modify or set aside any order made by it." The state also argues that, in any event, youth failed to meet his burden of establishing inadequate assistance of counsel.

For the following reasons, we conclude that, even assuming that youth may challenge the effectiveness of his trial counsel on direct appeal of the order revoking his probation, each of his challenges fails. First, youth asserts that counsel was ineffective by reason of failing to appeal from the court's order imposing sex offender treatment as a condition of probation on his harassment charge. Youth relies in part on factual allegations to demonstrate counsel's ineffectiveness in that regard, including youth's allegation that there was no evidence that his conduct resulting in the harassment charge had "sexual overtones" and his allegation that the related charges of sexual abuse had been dismissed. However, youth's challenge to counsel's effectiveness in the stated respect turns ultimately on the legal question of whether the court was authorized to impose that condition even if the condition was unrelated factually to the offenses he committed. *See State ex rel Juv. Dept. v. Dahl*, 104 Or App 145, 148, 799 P2d 674 (1990), *rev den* 311 Or 166 (1991) (noting, in the context of a parental rights termination case, that assertions of ineffective assistance of counsel do not necessarily require development of a factual record). As discussed above, we have concluded that a juvenile court is not restricted to imposing conditions of probation that are narrowly and directly related to the conduct at issue in the particular case, but may impose any condition that fulfills the purposes of the juvenile justice system, including conditions intended to facilitate the rehabilitation of a youth. Accordingly, any objection to or appeal

from the order imposing sex offender treatment as a condition of youth's probation on the harassment charge necessarily must have failed. Counsel was not ineffective by reason of failing to appeal that order.

■■ ■■ By contrast, youth's second assertion of ineffective assistance depends in part on factual findings for its resolution. In the context of such an assertion of ineffective assistance, a youth is required to "make a threshold showing of specific allegations that support the claim of inadequate assistance." *State ex rel Juv. Dept. v. Jones*, 177 Or App 32, 34, 33 P3d 373 (2001); *cf. Trujillo*, 312 Or at 435 (burden is on post-conviction petitioner to make required factual showing regarding counsel's asserted inadequacy). If, and only if, we determine that a youth has made a sufficient showing in that regard—for example in regard to the content and significance of evidence that trial counsel failed to present—will this court remand the claim to the juvenile court for further development of the record regarding the youth's allegations, including any contrary evidence. *Jones*, 177 Or App at 34.

Youth has not made a sufficient threshold factual showing here. In regard to his assertion that counsel was ineffective by reason of advising him to stipulate to combining his robbery and harassment probations, youth alleges that his robbery probation was about to expire and that combining his probations had the apparent and undesirable effect of requiring that he complete sex offender treatment as a condition of his probation on the robbery charge. However, youth points to no specific facts demonstrating that counsel's advice regarding the stipulation did not take those consequences into account, nor does he demonstrate that the advice he was given did not constitute a legitimate tactical decision on counsel's and youth's part (for example in the face of some other possible disposition for youth's newly adjudicated harassment charge). Having failed to make the required factual showing, youth's second assertion of ineffective assistance fails.

Finally, having rejected youth's collateral challenge to his stipulation to combining his probations, we necessarily must also reject youth's third assertion of ineffective assistance of counsel: that counsel was ineffective for failing to

object to the duration of youth's commitment to OYA. As discussed in regard to youth's second assignment of error, after youth stipulated to combining his probations, the trial court was authorized, based on youth's violation of a condition of his combined probations, to revoke the probations and commit him to OYA for any period up to the maximum period authorized for the more serious of the two charges. Accordingly, any objection by counsel to the court's five-year commitment order necessarily would have lacked legal merit. Counsel was therefore not ineffective for failing to object to that disposition.

Affirmed.