Submitted on record and briefs November 30, 2006, affirmed December 19, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TYRONE DEWAYNE BOWDEN,
aka Dewayne Tyrone Bowden,
*Defendant-Appellant.*

Multnomah County Circuit Court
030431874; A128452

174 P3d 1073

Peter Ozanne, Executive Director, Peter Gartlan, Chief Defender, and John L. Susac, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and David B. Thompson, Senior Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

ORTEGA, J.

**ORTEGA, J.**

Defendant appeals a judgment revoking his probation based on two subsequent juvenile adjudications and imposing a presumptive sentence. He contends that the mandatory revocation of probation under ORS 137.712(5) applies only to persons who commit new crimes and, because a juvenile adjudication is not a conviction of a crime, the revocation was in error. Because this case presents a matter of statutory construction, we review for errors of law, *Holbrook v. Precision Helicopters, Inc.*, 162 Or App 538, 541, 986 P2d 646, *rev den*, 329 Or 527 (1999). We affirm.

The facts are undisputed. When defendant was 16 years old, he was charged as an adult with second-degree robbery, a Measure 11 offense under ORS 137.707, and convicted.[1] Defendant was exempted from the mandatory minimum sentence based on the criteria set out in ORS 137.712 and was placed on probation. While on probation, defendant committed acts that resulted in two juvenile adjudications. Based on those adjudications, the trial court revoked defendant's probation and imposed the presumptive sentence as directed in ORS 137.712(5), which provides:

> "Notwithstanding ORS 137.545(5)(b) [governing revocation of probation], if a person sentenced to probation under this section violates a condition of probation by *committing a new crime*, the court shall revoke the probation and impose the presumptive sentence of imprisonment under the rules of the Oregon Criminal Justice Commission."[2]

(Emphasis added.)

---

[1] ORS 137.707(1)(a) requires that a person who is 15, 16, or 17 years old at the time a listed offense is committed must be prosecuted as an adult in criminal court.

The legislature amended ORS 137.707 in 2007. Or Laws 2007, ch 867, § 6. The amendment does not affect our analysis of this case.

[2] After the conviction and adjudications at issue here, the legislature amended ORS 137.712(6)(a)(A) by adding the following sentence: " 'Conviction' does not include a juvenile court adjudication described in this subparagraph if the person successfully asserted the defense set forth in section 4 of this 2005 Act." Or Laws 2005, ch 843, § 22. That amendment refers to an affirmative defense of "[m]ental disease or defect constituting insanity under ORS 419C.411(2)." Or Laws 2005, ch 843, § 4. The amendment to ORS 137.712 did not become operative until July 1, 2007. Or Laws 2005, ch 843, § 38(2). Even if the amendment had become operative in time to apply to defendant's case, it would not alter our analysis.

Defendant argued below that his probation should not be revoked because his juvenile adjudications did not constitute "committing a new crime" within the meaning of the statute. He renews that argument on appeal, quoting our statement in *State ex rel Juv. Dept. v. Johnson*, 168 Or App 81, 87, 7 P3d 529 (2000), that "juvenile adjudications are not 'crimes.'" Accordingly, he contends, had the legislature intended for a juvenile adjudication to trigger mandatory probation revocation, it would have written subsection (5) to include the commission of "acts which, if committed as an adult, would constitute a crime."

■ As with any issue of statutory construction, we follow the methodology set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), examining first the text and context of the statute for evidence of the legislature's intent as to its meaning and resorting to legislative history and then to general maxims of statutory construction only if the statute is ambiguous. Here, aided by our analysis of a similar question of statutory construction in *State ex rel Juv. Dept. v. Fitch*, 192 Or App 56, 84 P3d 190, *rev den*, 337 Or 282 (2004), we conclude that the text and context of the statute demonstrate that defendant's conduct that led to his two subsequent juvenile adjudications constituted, in each case, "committing a new crime" within the meaning of ORS 137.712(5).

As noted, our analysis in *Fitch* is helpful to our analysis here. In that case, we addressed the question of whether a juvenile is capable of "committ[ing] a crime" for purposes of the hindering prosecution statute, ORS 162.325(1), which provides:

"A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has *committed a crime* punishable as a felony * * *, [the person commits one of certain enumerated acts.]"

(Emphasis added.) In *Fitch*, the youth argued that he did not violate that statute when he interfered with police efforts to apprehend his 15-year-old friend who was wanted for second-degree escape, reasoning that, because juveniles are not held criminally responsible for their conduct, his friend could not

"commit[ ] a crime" within the meaning of the statute. 192 Or App at 58. As a matter of law under the juvenile code, the youth reasoned, juveniles do not commit crimes but, instead, "commit acts which, if done by an adult, would constitute a crime." *Id.* at 59. He contended further that "juvenile court adjudications are not criminal convictions; * * * juvenile delinquency proceedings are not criminal proceedings of any kind; and * * * juvenile dispositions are not sentences." *Id.* The youth concluded that, because the juvenile friend whom he aided was legally incapable of committing a crime, the youth did not hinder the apprehension of a person who had "committed a crime" within the meaning of the hindering prosecution statute. *Id.* at 60.

In rejecting those arguments, we examined the historical interplay between Oregon's juvenile and criminal justice systems and noted that, in addition to various current exceptions to exclusive juvenile court jurisdiction based on the age of the youth and the nature of the conduct at issue, any juvenile remains subject to prosecution as an adult under existing law if he is not apprehended until after he turns 18. *Id.* at 60-62. We noted further that the criminal code makes few distinctions between adults and juveniles in its application; in general, "crimes * * * are committed whenever a human being, irrespective of age, engages in the prohibited act with the prescribed mental state." *Id.* at 63. We concluded that, although the juvenile code decriminalizes the responsibility for the commission of a crime, it does not decriminalize the juvenile's conduct. *Id.* at 64-65.

We then concluded that the text of the hindering prosecution statute—referring to interference with the apprehension, prosecution, conviction, or punishment of a person who "*has committed* a crime punishable as a felony"— is directed toward the *conduct* of the person aided rather than the *legal responsibility* imposed for that conduct. *Id.* at 66 (emphasis added). We explained that, had the legislature intended otherwise, the statute would have been drafted to refer to a person "who could be charged with or convicted of a felony crime," rather than a person who "has committed a crime punishable as a felony." *Id.* We further found significant the statute's abandonment of the common-law requirement that the principal actor be convicted of and punished for

a felony in favor of a focus on the aided person's conduct. *Id.* at 68. Accordingly, we concluded that a "juvenile who engages in felonious conduct * * * commits a 'crime' for purposes of the hindering prosecution statute" regardless of whether that person is held criminally responsible for that conduct. *Id.* at 73.

*Fitch* establishes that the juvenile code, in effect, decriminalizes only responsibility for the commission of a crime; it does not decriminalize the juvenile's *conduct.* Accordingly, following our analysis in *Fitch,* defendant here is capable of "committing a new crime" within the meaning of ORS 137.712(5), regardless of whether he did so as a juvenile or his conduct resulted only in a juvenile adjudication. Like the hindering prosecution statute at issue in *Fitch* (referring to a person who "has committed a crime punishable as a felony"), the plain meaning of ORS 137.712(5) (referring to "committing a new crime") addresses the conduct of the probationer, not his criminal responsibility for that conduct. *See Fitch,* 192 Or App at 66 (following a similar analysis).

Our statement in *Johnson,* 168 Or App at 87, that "[j]uvenile adjudications are not 'crimes,' " does not compel a different result here. That case, which addressed the unrelated question of the lawful duration of a juvenile disposition under ORS 419C.005, stands for the proposition that juvenile adjudications are not criminal prosecutions. *See Fitch,* 192 Or App at 64 (so construing *Johnson*). The import of *Johnson* and of the cases it cites is directed to the legal responsibility that may be imposed for acts committed by a juvenile, not the criminality of the acts themselves.

■    In summary, we conclude that, for purposes of mandatory probation revocation under ORS 137.712(5), a juvenile "commit[s] a new crime" when that juvenile engages in conduct that violates the law by committing an act that, if committed by an adult, would constitute a crime. The trial court did not err when it revoked defendant's probation based on his juvenile adjudications.

Affirmed.