596 April 9, 2025 No. 317

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of D. S. H.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

D. S. H.,
*Appellant.*

Columbia County Circuit Court
23JU01937; A182800 (Control), A182801

Michael T. Clarke, Judge.

Argued and submitted February 18, 2025.

Ginger Fitch argued the cause for appellant. Also on the brief was Youth, Rights & Justice.

Patricia G. Rincon, Assistant Attorney General, argued the cause for respondent. Also on the brief was Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

In this juvenile delinquency case, youth appeals a juvenile court order and judgment finding him in violation of his probation and recommending that Oregon Youth Authority (OYA) place him in a youth correctional facility. We address only youth's first assignment of error, as it proves to be dispositive and obviates the need to reach the other two. The juvenile court ordered as a condition of youth's probation that youth "[f]ollow probation conditions as designated by OYA." After youth was discharged from his residential program for assaulting another youth, the court found him to have violated that probation condition. As explained below, we conclude that the court plainly erred in finding youth in violation of his probation without knowing what probation conditions, if any, had been designated by OYA. Accordingly, we reverse and remand.

FACTS

We review the juvenile court's legal rulings for errors of law and are bound by its factual findings if any evidence supports them.[1] *State v. G. L. D.*, 253 Or App 416, 418, 290 P3d 852 (2012), *rev den*, 354 Or 597 (2013). We state the facts accordingly.

In May 2023, youth admitted to engaging in conduct that, if committed by an adult, would constitute first-degree criminal mischief, ORS 164.365. The juvenile court adjudicated youth delinquent; placed him in the legal custody of OYA for care, placement, and supervision; ordered him to "[f]ollow probation conditions as designated by OYA"; and recommended placement in an OYA program other than a youth correctional facility. Youth was in fact placed in a residential program operated by Homestead Youth and Family Services.

In September 2023, the juvenile court issued a show-cause order, requiring youth to appear and show cause why his probation should not be revoked. The impetus for that

---

[1] Youth has not requested *de novo* review, nor do we exercise our discretion to provide it. *See* ORS 19.415(3)(b) (allowing the court, "in its sole discretion," to "try the cause anew upon the record"); ORAP 5.40(8)(c) (providing for the exercise of such discretion "only in exceptional cases").

order was a youth probation officer's motion and affidavit attesting that youth had been terminated from Homestead in late September and alleging that youth thereby violated the court's order to follow OYA-designated probation conditions.

At the show-cause hearing, a different probation officer, Matherly, testified. She confirmed that youth had been placed in the Homestead program. When asked to describe what the Homestead program entailed, she answered,

> "It's a BRS, a behavioral rehabilitative service program in Pendleton, Oregon. It's an onsite residential program that offers different day treatment and the youth live there onsite. He also attends school there. But part of the conditions is safety and security, first and foremost. And then also, follow the program rules and expectations.

> "Every program is just a little bit of different or just a little bit different because of the level of supervision, or more independent, or more restrictive but basically, overall, he was expected to follow all the rules of Homestead's specific program."

Matherly testified to having received from Homestead a discharge summary regarding youth. She understood youth to have been unsuccessfully discharged for violating program rules by assaulting another youth. Matherly noted that there had been other rule violations but that the assault was the reason for the discharge. On redirect, Matherly confirmed that when a youth is terminated from a residential program, "that means there's been something extreme or *** an ongoing pattern of behavior" such that "the treatment program cannot keep him *** any longer," and that that was "what happened in this case."

The next witness was Homestead's executive director, Dr. Doebler-Irvine. She testified that youth "had periods of time where he did well [in the program] and was participatory and making progress on his goals" but "also had a number of periods of time where he struggled and had problems following the rules and managing his behavior." Ultimately, youth was unsuccessfully discharged from the program, after he "assaulted another youth" and was cited by law enforcement for fourth-degree assault. When asked whether the discharge was due to the law enforcement citation,

Doebler-Irvine clarified, "The assault was the reason for the discharge from the program." Doebler-Irvine described the incident as having occurred in a small room with at least two adult staff members present. The staff members did not witness the actual punch, but they "witnessed [youth] enter the office, crowd into where the other youth was, and s[aw] the boy drop to the ground." Asked if they would have seen it if the other boy took a swing at youth, Doebler-Irvine answered that she was "not sure about that."

In closing arguments, youth expressed uncertainty as to what OYA-designated probation condition he had allegedly violated. He argued that, if the allegation was that he violated Homestead's rules, then the Juvenile Department's inability to disprove that youth acted in self-defense (as he claimed) foreclosed the necessary finding for a violation. If, by contrast, the allegation was that he was terminated from Homestead's program, then that fact obviously had been proved.

The juvenile court found that youth had failed to follow OYA-designated probation conditions and, thus, violated the court-imposed probation condition. In doing so, the court made clear that it was making an assumption as to what probation conditions OYA would have designated for youth. The court ruled:

> "Well, it seems to me, based on the testimony that I've heard, I didn't hear any specific witnesses to the alleged assault but I did hear from two witnesses that described that he was terminated from Oregon Youth Authority services or at least that location, the Homestead Youth and Family Services.
>
> "And so *if* the conditions of probation include that he follow directions at that location and follow the rules and not be discharged and follow all treatment recommendations, *which I believe would be the requirements*, then he has violated probation because he's now been discharged for his behavior at that location. So the Court does find that he is in violation of probation."

(Emphases added.)

ANALYSIS

On appeal, in his first assignment of error, youth argues that it was error for the juvenile court to find him in violation of an OYA-designated probation condition when there was no evidence as to what probation conditions, if any, OYA had actually designated.[2] The state challenges preservation, as well as disputing the merits.

We begin with the threshold issue of preservation. *See State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) ("Generally, an issue not preserved in the trial court will not be considered on appeal."); ORAP 5.45(1) (as to unpreserved issues, we have discretionary authority to correct "plain" errors). Youth contends that his statements in closing argument, identifying the ambiguity as what OYA-designated probation condition he had allegedly violated, adequately preserved his claim of error. Youth alternatively requests plain-error review.

We agree with the state that youth's closing argument did not adequately preserve the claim of error that he raises on appeal. Although youth's counsel expressed some uncertainty about the relevant probation condition, his statements did not suggest—as he argues on appeal—that the lack of evidence on that point actually prevented the juvenile court from finding a probation violation. The purposes of preservation were not served, so our review is limited to plain error. *See State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (an error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without having to choose among competing inferences); *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006) (it is a discretionary decision whether to correct a plain error).

The issue before the juvenile court at the show-cause hearing was whether youth had violated the court's order

_____

[2] To the extent that youth challenges the court-imposed probation condition allowing OYA to designate probation conditions for youth, viewing it as an improper delegation of the juvenile court's authority to OYA, that issue is not properly before us, as youth did not appeal the judgment imposing that condition. *State v. B. H. C.*, 288 Or App 120, 125, 404 P3d 1110 (2017) ("[A] youth *must* raise any challenge to a probation condition on appeal from the order imposing it." (Emphasis in original.)).

to "[f]ollow probation conditions as designated by OYA." As such, the central issue for the court to decide was whether youth's specific conduct violated a specific OYA-designated probation condition. *See State ex rel Juv. Dept. v. Rial*, 181 Or App 249, 254-56, 46 P3d 217 (2002) (explaining that a youth has the right to adequate notice of the allegations against them as to a purported probation violation, and evaluating whether the juvenile court's decision was tied to the allegations made).

Despite that being the central issue, the state did not present any documentation of any OYA-designated probation conditions. *See* ORS 419C.570(1)(b) (requiring the juvenile court to review, ratify, and "make * * * a part of the probation order" the Juvenile Department's supervision plan for a youth on probation). As the state acknowledged at oral argument, the juvenile court's "file and the original orders don't include the specific conditions that OYA entered with youth or that OYA specifically imposed on youth." The state contends that the juvenile court nonetheless did not plainly err in finding a probation violation, given the testimony at the show-cause hearing, which the state views as adequate to establish violation of OYA-designated conditions.

It is difficult to see how the juvenile court could properly find youth in violation of an OYA-designated probation condition without knowing what probation conditions, if any, OYA had designated for him. For example, if OYA had designated as a probation condition that youth "obey all laws," then whether youth acted in self-defense during the incident at Homestead (as he claimed) would be critical. Similarly, if OYA had designated as a probation condition that youth comply with Homestead's rules, it would be necessary to know what Homestead's rules were, whether it would violate those rules to hit someone in self-defense, and, if not, whether youth acted in self-defense. Conversely, if OYA had designated as a probation condition that youth successfully complete Homestead's program, then youth's termination from the program in and of itself would be enough to find a probation violation.

The state argues that Matherly's testimony at the show-cause hearing was sufficient to establish what

probation conditions OYA had designated for youth, or at least takes the case out of the realm of plain error. As previously described, both Matherly and Doebler-Irvine testified that youth was unsuccessfully discharged from the Homestead program for violating program rules by assaulting another youth. In the state's view, Matherly tied that information to OYA-designated probation conditions when she testified, while generally describing the Homestead program, that "part of the conditions is safety and security, first and foremost[, a]nd then also, follow the program rules and expectations" and that every program is different but that, "overall, [youth] was expected to follow all the rules of Homestead's specific program."

It seems unlikely that, in making the foregoing statement, Matherly was referring to *probation conditions* that OYA had imposed on youth, given that she was answering a question about Homestead's program, not a question about youth's probation conditions or even about OYA. There is obviously a difference between youth being expected to follow Homestead's rules and meet program expectations—as would any program participant—and OYA imposing an actual probation condition in that regard, such that youth could be found in violation of his juvenile court probation or revoked from probation if he failed to do so. The bigger problem with the state's argument, however, is that the juvenile court itself did not so understand Matherly's testimony, or at least did not rely on it as establishing youth's actual probation conditions. To the contrary, in making its ruling, the court implicitly acknowledged that it did not know what probation conditions OYA had designated for youth ("if the conditions of probation include") and indicated that it was making an educated guess as to what they were ("which I believe would be the requirements").

Under the circumstances, we are persuaded that the juvenile court plainly erred in finding youth in violation of his probation. On the record made by the state, the court was put in the position of having to speculate on the critical issue of what probation conditions, if any, OYA had designated for youth. That is a legal error that is apparent on the record, and we consider it obvious and not reasonably

in dispute that the court needed to know what youth's OYA-designated probation conditions were in order to find him in violation of them. *See Vanornum*, 354 Or at 629 (requirements for a "plain" error).

Further, we exercise our discretion to correct the error, given its gravity. Without knowing what probation conditions OYA had actually designated for youth, the court had no objective measure by which to evaluate youth's conduct, and youth's ability to show that he had not violated his probation conditions was compromised. *Cf. Rail*, 181 Or App at 254 ("Youth is correct that he is entitled to the protections of the Due Process Clause in his probation revocation hearing, including adequate notice of the 'charges' against him."). Although youth could and should have raised the issue to the juvenile court, we are ultimately persuaded that the error is sufficiently grave that the ends of justice merit correction. If OYA is to be granted authority to designate its own probation conditions for a youth, then it is important—for both practical and due process reasons—that OYA notify the juvenile court and the youth of what those conditions are, and that any probation violation that is found is tied to an actual probation condition.

Reversed and remanded.