LAGESEN, P.J.
*837 Youth appeals a juvenile court judgment finding him within the court's delinquency jurisdiction for conduct that, if committed by an adult, would constitute riot, ORS 166.015. At the time of the incident in question, youth was on juvenile court probation for a previous adjudication of delinquency, and youth was found to have violated the conditions of his probation as a result of the incident. The question on appeal is whether ORS 419A.190 required the juvenile court to dismiss the petition in this case as a consequence of the fact that youth previously had been sanctioned for a probation violation in connection with the same incident. For the reasons that follow, we conclude that the answer to that question is yes: Because youth previously had been adjudicated to be in violation of his probation based on allegations arising out of the same conduct, ORS 419A.190 barred this delinquency proceeding. We therefore reverse and remand with instructions to dismiss.
The facts relevant to the legal question before us are procedural and not in dispute. In 2014, youth was adjudicated delinquent for conduct that, if committed by an adult, would constitute interfering with a peace officer, ORS 162.247, and resisting arrest, ORS 162.315. The juvenile court placed youth on probation. One of the conditions of youth's probation required him to "[a]ttend school regularly and obey all school rules, no skipping."
Almost a year later, the state initiated a probation violation proceeding by filing a probation violation petition. The petition alleged that youth violated that condition of probation because, "[o]n or about April 23, 2015, [youth] was expelled due to fighting." At a later hearing, youth admitted the allegation. The court accepted youth's admission, found him in violation of his probation, and ordered youth to complete 24 hours of community service, but also continued the dispositional hearing until a later date. The dispositional order on the probation violation noted both that the juvenile court counselor was recommending detention and also that the "DA may be filing new petition from alleged behavior that resulted in expulsion."
*838 Consistent with that notation, several weeks later, the state initiated this delinquency proceeding. In the petition, the state alleged that youth had committed acts that, if committed by an adult, would constitute the crime of riot, in violation of ORS 166.015. Those acts, the state alleged, were as follows:
"On or about the 23rd day of April, 2015, in the county of Multnomah, State of Oregon, [youth] did unlawfully and knowingly, while participating with 5 or more other persons, engage in tumultuous and violent conduct, thereby RECKLESSLY creating a grave risk of causing public alarm."
(Uppercase in original.)
Youth moved to dismiss the petition. He argued that ORS 419A.190 barred the proceeding because he had already admitted to his involvement in the underlying incident in the earlier probation violation proceeding. He also argued that the double jeopardy provisions of the state and federal constitutions barred the proceeding. In response, the state's primary argument was that the probation *661 violation proceeding involved different conduct-youth's expulsion-than the conduct underlying the allegations of riot. The state also disputed that, under state and federal constitutional double jeopardy principles, a probation violation proceeding precluded a later delinquency adjudication based on the same underlying conduct. The juvenile court agreed with the state and denied youth's motion to dismiss. As noted, it then found that youth had committed conduct that, if committed by an adult, would constitute riot, and put youth on probation for that conduct. Youth appealed.
On appeal, youth renews his argument that ORS 419A.190 barred this delinquency proceeding because he previously had been found in violation of his probation as a result of the same incident. The state responds that, for purposes of ORS 419A.190, juvenile probation violation proceedings do not involve the sort of "adjudicatory hearings" that bar subsequent proceedings based on the same conduct under that statute. The state argues further, as it did below, that ORS 419A.190 does not bar this proceeding because it does not involve the same conduct underlying the probation violation proceeding.
*839 So framed by the parties' arguments, this appeal presents two distinct questions about the interpretation and application of ORS 419A.190. The first is whether juvenile probation violation proceedings involve the sort of "adjudicatory hearing[s]" that bar other adjudicatory proceedings based on allegations stemming from the same conduct. The second question is whether this delinquency case is based on the same conduct alleged to be at issue in the probation violation hearing for purposes of the statute. Both questions involve issues of statutory construction, and our review, therefore, is for legal error. State v. Lobo , 261 Or. App. 741, 751, 322 P.3d 573 (2014). In conducting our review, our job is to ascertain the legislature's intent in enacting ORS 419A.190. DCBS v. Muliro , 359 Or. 736, 742, 380 P.3d 270 (2016). We do so by examining the statutory text, context, and any pertinent legislative history. State v. Gaines , 346 Or. 160, 171-73, 206 P.3d 1042 (2009) ; Multnomah County Sheriff's Office v. Edwards , 361 Or. 761, 771, 399 P.3d 969 (2017).
Starting with the first question, ORS 419A.190 provides:
"Except as provided in ORS 153.108(1), proceedings in adult criminal court and other juvenile court adjudicatory proceedings based on an act alleged in a petition or citation to have been committed by a child, ward, youth or youth offender or allegations arising out of the same conduct are barred when the juvenile court judge or referee has begun taking evidence in an adjudicatory hearing or has accepted a child, ward, youth or youth offender's admission or answer of no contest to the allegations of the petition or citation. This section does not prevent appeal of any pre-adjudicatory order of the court that could be appealed in a criminal case, including, but not limited to, an order suppressing evidence."
It is clear from the statutory text that some juvenile court proceedings bar subsequent proceedings arising out of the same conduct. But what sorts of juvenile court "adjudicatory hearing[s]" operate to bar "other" proceedings? Do probation violation proceedings entail such hearings? The legislature has not supplied a clear answer to those questions. That is, it has not provided a definition of "adjudicatory hearing." Thus, it is up to us to ascertain the legislature's likely intention by examining the clues-no matter *840 how meager-that it has given us in the form of the statute's text, context, and legislative history.
We start with the text at issue: "adjudicatory hearing." The legislature has not defined it, and it is otherwise ambiguous. As the parties' arguments demonstrate, it is susceptible to at least two plausible interpretations, one of which would include probation violation hearings, one of which would not.
Youth argues that we generally construe statutory terms in accordance with their ordinary usage, and that we should do so here. See State v. Dickerson , 356 Or. 822, 829, 345 P.3d 447 (2015). If interpreted to have its ordinary meaning, then "juvenile court adjudicatory proceeding" plainly would *662 encompass a juvenile court probation violation proceeding. The ordinary meaning of "adjudicate" is "to come to a judicial decision," Webster's Third New Int'l Dictionary 27 (unabridged ed. 2002), and, slightly more helpful, "[t]o rule on judicially," Black's Law Dictionary 50 (10th ed. 2014). "Adjudication" is defined as "a determination, decision, or sentence, esp. without imputation of guilt (as a decree in bankruptcy or the disposition of a juvenile delinquent)." Webster's at 27. An "adjudication hearing" in the juvenile delinquency context similarly is defined as, "[i]n a juvenile-delinquency case, a hearing at which the court hears evidence of the charges and makes a finding of whether the charges are true or not true.-Also termed adjudicatory hearing ; adjudicatory proceeding ; adjudicative hearing ." Black's at 836 (emphasis in original). In this regard, we also note that this court has viewed probation violation proceedings as involving an "adjudicatory" stage. See, e.g. , State v. Hammond , 218 Or. App. 574, 579-80, 180 P.3d 137 (2008) (analyzing application of Oregon Evidence Code to "adjudicatory phase" of a probation revocation proceeding).
The state does not dispute that youth's proposed interpretation reflects the ordinary meaning of the phrase "adjudicatory hearing," or that the ordinary meaning of the phrase would encompass probation violation proceedings. Instead, the state argues, the phrase has a specialized, more limited, meaning in juvenile delinquency matters. See *841 Zimmerman v. Allstate Property and Casualty Ins. , 354 Or. 271, 280, 311 P.3d 497 (2013) ("When the term has acquired a specialized meaning in a particular industry or profession, however, we assume that the legislature used the term consistently with that specialized meaning."). The state argues that, "in delinquency matters, an adjudicatory hearing is one in which the court determines whether to take jurisdiction over a youth because he or she violated the law." In support of this argument, the state points to appellate decisions reflecting, as a general matter, the understanding that juvenile delinquency proceedings involve a distinct "adjudicatory" phase. See State ex rel Juv. Dept. v. Damrill , 14 Or. App. 481, 482 n. 1, 513 P.2d 1210 (1973) (differentiating between juvenile probation revocation proceedings and jurisdictional "adjudications"). The state asserts that this entrenched understanding of delinquency proceedings signals that the legislature likely intended the phrase "adjudicatory hearing" in ORS 419A.190 to have that limited, specialized meaning.
As noted, both proposed interpretations are reasonable readings of the plain terms of the statute; the text of the statute, standing alone, thus does not resolve this dispute.
Neither does context, which is more or less a wash for purposes of our analysis. The state points to a number of provisions in the juvenile code either in which the word "adjudication" plainly refers narrowly to the adjudication of whether a youth falls within the juvenile court's delinquency jurisdiction, or in which probation violation determinations are characterized as "disposition[s]" rather than adjudications. See, e.g. , ORS 419C.400(5) ("An adjudication by a juvenile court that a youth is within its jurisdiction is not a conviction of a crime or offense."); ORS 419C.261(2)(a) (allowing for dismissal of "petition filed under ORS 419C.005" after considering the "interests of the state in the adjudication of the petition"); ORS 419C.610 (governing proceedings in which a juvenile court finds a violation of a probation); ORS 419C.411 (identifying the juvenile court's authority to craft an appropriate disposition). These references lend support for the state's proposed interpretation of "adjudicatory proceeding." But not all juvenile code provisions use the word "adjudication" in that limited sense. As youth points out, a least one provision uses the term "adjudication" in connection *842 with probation violation proceedings. ORS 419C.145 -which, along with ORS 419A.190, was enacted in 1993 as part of the comprehensive reorganization and revision of the juvenile code[1] -provides, in relevant part:
"(1) A youth may be held or placed in detention before adjudication on the mer its *663 if one or more of the following circumstances exists:
"* * * * *
"(b) The youth is alleged to be within the jurisdiction of the court under ORS 419C.005, by having committed or attempted to commit an offense which, if committed by an adult, would be chargeable as:
"(A) A crime involving infliction of physical injury to another person;
"(B) A misdemeanor under ORS 166.023 ; or
"(C) Any felony crime;
"* * * * *
"(d) The youth is currently on probation imposed as a consequence of the youth previously having been found to be within the jurisdiction of the court under ORS 419C.005, and there is probable cause to believe the youth has violated one or more of the conditions of that probation * * *."
ORS 419C.145(1) (emphases added). If there is probable cause to believe that youth has violated a condition of his probation, he may be held in detention until there is an "adjudication on the merits" of the alleged violation. This suggests that the legislature contemplated a youth being "adjudicat[ed] on the merits" following an allegation of a probation violation, lending support to youth's contention that the legislature intended the phrase "adjudicatory hearings," for purposes of ORS 419A.190, to include probation violation hearings.[2]
*843 Another potential contextual clue to the types of proceedings that bar subsequent proceedings could be the legislature's use of the word "petition." Ultimately, though, it does not do much to advance our analysis. As is the case with the word "adjudication," the word "petition" appears throughout the juvenile code in provisions that pertain only to jurisdictional adjudications. See, e.g. , ORS 419A.208 (1)(a) (allowing for appeal of "order made prior to an adjudicatory hearing dismissing or setting aside a delinquency petition"); ORS 419C.200(1) (setting forth process for appointment of counsel "[w]hen a petition is filed under ORS 419C.005"); ORS 419C.250(1) (identifying who is permitted to file "a petition alleging that a youth is within the jurisdiction of the court as provided in ORS 419C.005"). This lends some support to the state's construction of ORS 419A.190 ; if the word "petition" refers only to jurisdictional petitions, then the reference to "adjudicatory proceedings" in ORS 419A.190 might refer narrowly to jurisdictional adjudications. But another provision employing the word "petition" points a different direction. We have recognized that probation violations are initiated by "petition" under ORS 419C.610 ("Except as provided in ORS 419C.613, 419C.615 and 419C.616, the court may modify or set aside any order made by it upon such notice and with such hearing as the court may direct.") and ORS 419C.615(1) ("In addition to any other grounds upon which a person may petition a court under ORS 419C.610 ." (Emphasis added.) ). State ex rel Juv. Dept. v. Rial , 181 Or. App. 249, 254 & n. 2, 46 P.3d 217 (2002) (referencing probation violation "petition" and acknowledging ORS 419C.610 as source of juvenile court's authority to revoke a youth's probation because "the juvenile court is, in effect, modifying its dispositional order in the case"). See also Damrill , 14 Or. App. at 482 n. 1, 513 P.2d 1210 (differentiating between jurisdictional proceedings pursuant to the statutory predecessor to ORS 419C.005 and probation violation proceedings pursuant to the statutory predecessor to ORS 419C.610 ). That gives youth's interpretation some traction.[3]
*664 *844 That leaves us with legislative history to guide us in discerning the legislature's intention. That history persuades us that youth's proposed interpretation is the one more likely intended by the legislature. As noted, ORS 419A.190 was enacted in 1993 as part of a comprehensive revision of the juvenile code. Or. Laws 1993, ch. 33, § 46.[4] However, the provision was drawn from former ORS 419.578 (1979), repealed by Or. Laws 1993, ch. 33, § 373, and recodified as ORS 419A.190 by Or. Laws 1993, ch. 33, § 46, and the legislative history of the 1993 act indicates that the legislature did not, in the main, intend to alter existing law when re-enacting preexisting provisions. See, e.g. , State ex rel Juv. Dept. v. M. T. , 321 Or. 419, 421 n. 1, 899 P.2d 1192 (1995) (noting that 1993 recodification of juvenile code left many provisions "substantially unchanged"). We therefore examine the legislative history of the statute from which ORS 419A.190 originated, former ORS 419.578 (1979).[5]
Two aspects of that legislative history persuade us that the legislature likely intended for the phrase "adjudicatory hearing" to have its ordinary meaning. First, the legislature discussed the types of hearings that would trigger the statutory bar. In discussing what sorts of hearings would be covered under the statute, the legislators were concerned with whether a remand hearing (a hearing where the court determines whether youth may be prosecuted in criminal court or juvenile court) would be considered "adjudicatory" and thereby prevent further proceedings at either the adult or juvenile court level after transfer. At the Interim Committee on the Judiciary, the bill drafters' spokesman, Dennis Bromka, stated that a remand hearing is not an adjudicatory hearing and the court in that hearing is not *845 in the position of accepting admissions. Minutes, House Committee on Judiciary, HB 2012, Feb. 1, 1979, Tape 5, Side 1.[6] That description of the types of hearings that would be encompassed suggests that the legislature would have contemplated that probation violation hearings, where the court is "in the position of accepting admissions," would fall within the statute.
Second, the legislative history reflects an overarching concern that juveniles be spared successive dispositions for the same conduct. The drafters wanted to make clear that the juvenile court had "one shot" and could not first give one disposition and later give another for the same act, stating a range of possible dispositions are available to the court upon first try and the court just has to choose the right one. Minutes, House Committee on Judiciary, HB 2012, Feb. 1, 1979, 16-17. That is consistent with what Oregon courts have recognized as the legislature's policy of rehabilitation that underlies the juvenile code generally. See, e.g. , State ex rel Juv. Dept. v. Reynolds , 317 Or. 560, 574, 857 P.2d 842 (1993) ("Juvenile courts are concerned with rehabilitation, not punishment."). If the court has in one proceeding the tools needed to address the rehabilitation of the juvenile for the conduct at issue, then a separate proceeding to address the same conduct would not serve any further rehabilitative purpose. Because a juvenile court often will have the same dispositional options available to it at a probation violation proceeding as it would have in a proceeding to adjudicate a youth within its jurisdiction in the first instance, see ORS 419C.440 - 419C.507, the history suggests to us that the legislature likely intended for probation violation hearings to qualify as the sort of juvenile court "adjudicatory hearing[s]" that would bar *665 "other" proceedings arising out of the same conduct, for purposes of ORS 419A.190.[7]
In view of these indications of the legislature's objectives in enacting ORS 419A.190, we conclude that the *846 legislature "most likely intended" for the phrase "adjudicatory hearing" in ORS 419A.190 to have its ordinary meaning, a meaning that encompasses a juvenile court probation violation hearing. Muliro , 359 Or. at 742, 380 P.3d 270. Although this means that the rule that applies in juvenile court is different from that which applies in adult criminal court, this is consistent with the fact that juvenile delinquency proceedings are not criminal proceedings but are, instead, something quite different-proceedings to rehabilitate children. Reynolds , 317 Or. at 574, 857 P.2d 842. As the Supreme Court long ago recognized:
"The clear and unequivocal message of Oregon's juvenile code is to notify and involve parents whenever possible and to focus on the family, to involve schools and appropriate social agencies as early as possible, to handle matters informally, and to approach each child's alleged delinquency as an equitable problem rather than as a criminal problem."
Id . at 573, 857 P.2d 842.
That leaves the question of whether the probation violation hearing that preceded this case is one that, under ORS 419A.190, operated to bar this proceeding. Youth argues that the allegation of riot in the petition that initiated this case arose out of the same conduct as that alleged in youth's previously admitted-to probation violation petition. Youth reasons as follows: In petition Y-140328411 (petition #1), youth was alleged to have violated his probation because, "[o]n or about April 23, 2015, [youth] was expelled due to fighting[,]" and youth subsequently admitted to violating his probation by being expelled on that date. The state then filed petition Y-150522117 (petition #2), basing it on an alleged act that arose out of the same conduct as that described in petition #1: "On or about the 23rd day of April, 2015, *** [youth] did unlawfully and knowingly, while participating with 5 or more other persons, engage in tumultuous and violent conduct, thereby recklessly creating a grave risk of causing public alarm." Youth contends that, because the petitions allege acts that had occurred on or around the same date, with "one petition alleg[ing] expulsion due to fighting, and the other alleg[ing] 'tumultuous and violent conduct' with other persons[,] [t]he allegation that youth had engaged in acts that would have constituted rioting *847 'aros[e] out of the same conduct' as that which formed the basis of youth's probation violation admission."
Under the terms of the statute, youth's reasoning is correct:
"[J]uvenile court adjudicatory proceedings based on an act alleged in a [petition/citation] to have been committed by a [youth] *** or allegations arising out of the same conduct are barred ***."
ORS 419A.190. The probation violation petition alleges that, "[o]n or about April 23, 2015, [youth] was expelled due to fighting." The later petition alleges riot. "Fighting" was one of the acts alleged to have been committed by youth in the violation petition. The allegations in the riot petition were based on the allegations in the violation petition. In fact, at the time of the probation violation proceeding, the juvenile court expressly recognized that any subsequent petition likely would be based on the conduct that youth admitted led to his expulsion: "DA may be filing new petition from alleged behavior that resulted in expulsion." Under these circumstances, we conclude that the allegations at issue in this proceeding are ones "arising out of the same conduct" that was alleged to be at issue in the juvenile probation violation proceeding.[8]
*666 For these reasons, we conclude that a juvenile court probation violation proceeding is the type of juvenile *848 court "adjudicatory hearing," within the meaning of ORS 419A.190, that bars subsequent proceedings arising out of allegations based on the same conduct. We further conclude that the probation violation proceeding is one that barred the state from subsequently adjudicating youth delinquent for riot in this proceeding because the same conduct was the alleged basis for the probation violation proceeding. The juvenile court therefore should have granted youth's motion to dismiss.
Reversed and remanded with instructions to dismiss the petition.

Although both provisions have been amended since that time, neither has been amended in a way that bears on the questions presented in this case.

The state also suggests that statutory provisions governing double jeopardy in criminal proceedings and the state and federal constitutional prohibitions on double jeopardy provide relevant context. But, as we already have recognized, ORS 419A.190 is broader than those provisions. State v. Harris , 157 Or. App. 119, 124, 967 P.2d 909 (1998). As a result, we do not view them as helpful context.

Although ORS 419C.615 was enacted after the 1993 revision to the juvenile court code, as the Supreme Court has recognized, later-enacted statutes are "indirect evidence of what the enacting legislature most likely intended" to the extent that they demonstrate consistency or inconsistency in word usage. Halperin v. Pitts , 352 Or. 482, 490-91, 287 P.3d 1069 (2012).

Although the statute has been amended twice since that time, the amendments are not material to the issues raised in this case.

Former ORS 419.578 (1979) provided:
"Except as provided in subsection (1) of ORS 484.395, proceedings in adult criminal court and other juvenile court adjudicatory proceedings based on an act alleged in a petition or citation to have been committed by a child or allegations arising out of the same conduct are barred when the juvenile court judge or referee has begun taking evidence in an adjudicatory hearing or has accepted a child's admission or answer of no contest to the allegations of the petition or citation. This section shall not prevent appeal of any pre-adjudicatory order of the court which could be appealed in a criminal case, including, but not limited to, an order suppressing evidence."

Although we ordinarily would refer to the tape recordings of the hearings, we rely upon the minutes because, as acknowledged by both parties, the tapes are difficult to understand.

Although a juvenile court has wide authority to modify a disposition to address conduct that violates the conditions of probation, there may be durational limitations on the options available to it, depending on the timing of the violation. See ORS 419C.501, ORS 419C.504.

To the extent that the state argues that the "conduct" alleged to be at issue in the probation violation proceeding was youth's expulsion, rather than the underlying fighting, we reject that assertion. The expulsion of youth was not conduct by youth, it was conduct by the school. Youth violated the terms of his probation by engaging in conduct that violated school rules that, in turn, led to the school's conduct of expelling him.