No. 1036          December 3, 2025          335

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of C. L. B.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

C. L. B.,
*Appellant.*

Lane County Circuit Court
21JU01135; A181084

Amit K. Kapoor, Judge.

Submitted November 8, 2024.

Erica Hayne Friedman and Youth, Rights & Justice filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reed, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Youth appeals the juvenile court's judgment committing him to the legal custody of Oregon Youth Authority (OYA), for placement in a close-custody facility[1] for a period not to exceed 10 years. He raises two assignments of error. First, he argues that the juvenile court's judgment must be reversed because ORS 419A.190 prohibits successive dispositions arising out of the same conduct. Second, he argues that the juvenile court could not authorize OYA to place him in a youth correction facility under ORS 419C.495 because youth did not meet OYA's criteria for such placement under OAR 416-410-0060(5). On youth's first assignment, we conclude that ORS 419A.190 does not bar the juvenile court's decision to revoke youth's probation and recommend placement in a close-custody facility. On his second assignment, we conclude that the juvenile court is not constrained by OYA's regulation and therefore did not abuse its discretion in recommending that OYA place youth in close custody. Accordingly, we affirm.

## I.   FACTS

We summarize the facts, which are mostly procedural and not in dispute. In April 2021, youth was adjudicated for conduct that, if committed by an adult, would constitute first-degree sexual abuse, committed to OYA custody for a period not to exceed 10 years, and placed on probation supervised by OYA. Over the next two years, he struggled to maintain engagement in treatment and stability in his behavior, and he was removed from his placements three times.

In November 2022, he was placed at J Bar J Ranch, a treatment program, for the second time. Between November 2022 and March 1, 2023, youth made negative and disrespectful comments, including hate speech, and was verbally aggressive towards other youth and staff at J Bar J Ranch, in violation of the rules of the program. In February 2023, he was placed on a "behavior contract" due to his compliance issues, hate speech, negative staff and peer interactions, and failure to follow basic guidelines or fulfill day-to-day obligations. As a result of his behavior, the program had difficulty

---

[1] Under OYA regulations, "close custody" is the "placement designation for youth in custody who are committed to OYA legal custody or transferred to OYA physical custody[] and reside in youth correction facilities." OAR 416-410-0010(1).

providing him treatment, and the lead case manager recommended that youth stabilize somewhere else. J Bar J Ranch issued a 30-day change of placement notice on February 27, 2023.

On March 8, the state filed a petition alleging that youth violated the terms of his probation by (1) making disrespectful comments, including hate speech, towards other youth and staff; (2) engaging in physical aggression and bullying towards other youth and staff; (3) refusing to work with his therapist and on treatment; and (4) failing to progress adequately in treatment.

On March 14, the juvenile court conducted a hearing on the probation violation. The juvenile court ruled that the state had proven the first and fourth allegations, concluding that youth violated his probation by violating the rules of his program by failing to adequately progress in treatment, and making negative and disrespectful comments, resulting in termination from his residential program.[2] Based on youth's probation violations, the court stated that it would follow the state's recommendation for youth to serve eight days of detention, with credit for time served, beginning on March 8.[3] The juvenile court then began to move into a discussion of dispositional review of the proper placement for youth. Youth requested a recess to allow youth's attorney time to seek appropriate placement options. The recess was granted.

Two days later, the juvenile court conducted a "dispositional review hearing" on March 16 and 17. Because OYA and youth's attorney were unable to discover alternative options, OYA requested that the juvenile court place youth in a close-custody facility. OYA Probation Officer Sinniger told the court that he had not identified an "appropriate" program that had an opening for youth, that "[h]ome [was] also not an option," and neither was placement with youth's aunt and grandparents. Based on the "the number [of] opportunities [youth] had in the community" and the

---

[2] The juvenile court concluded that the state had not proven allegation two, and the state dismissed allegation three.

[3] Youth was already being held in detention at the time of the hearing and had been there since March 8.

lack of alternative opportunities available under the circumstances, OYA recommended close custody for the youth to stabilize and complete sex-offender treatment.

Youth argued that placement in close custody would violate youth's former-jeopardy rights because the court had already stated its intention to order the 8-day detention. Youth also argued that he did not meet the criteria for close custody under OAR-416-410-0060(5), because OYA had not proven that youth had engaged in "serious and persistent criminal behavior," or that close-custody placement was necessary because youth "cannot be safely served by available community resources."

In response, the state argued that double jeopardy did not apply because the OYA's recommendation for close-custody placement was pursuant to a dispositional finding following the order of detention on the probation violation. The placement recommendation, the state argued, was based on "all of the prior circumstances that youth [found] himself in." The state further argued that placement in a close-custody facility was not itself a "sanction" that would "justify raising the double jeopardy concerns," but rather a "placement decision." The court requested briefing (or written memoranda) on the double-jeopardy argument and delayed further proceedings until March 17. In so doing, the juvenile court laid out its understanding of the procedural posture of the case:

> "THE COURT:  All right. So[,] I'm just making sure that I'm getting my timeline correct, which is we've dealt with the probation violation consequences and started going into a dispositional review. [Youth's attorney], you asked for a brief—I'll call it a brief recess because you asked until [March 16] to be able to see what options there were.
>
> "And my understanding of what was happening at that point, and correct me if I'm wrong, was that, well, that was going to be a dispositional review when we come back as to the totality of the case and the appropriate placement at that point because we had dealt with the [probation violation] component of it, which was up to eight days ***."

On March 17, 2023, after a lengthy discussion about youth's history of placements, progress in rehabilitation, and

the appropriateness of close custody, with no new evidence presented beyond the court report summarizing the case history, the court entered two separate judgments. In the first, a Judgment on Probation Violation, the court ordered that the "youth shall be placed in detention for up to 8 days, beginning on March 8, 2023." In the second, a Judgment of Disposition Review and Judgment of Commitment to Oregon Youth Authority, the court revoked youth's probation and ordered youth to continue placement in OYA custody for a period not to exceed 10 years beginning on March 17, 2023, and recommended placement in a "close[-] custody facility." As part of the court's second judgment, it concluded that it was in youth's best interest and welfare for him to be placed in the legal custody of OYA, and that there was a risk to the community if youth did not complete his treatment. The juvenile court determined that there were no less restrictive placements available for youth and no community options were available at that time. The court explained that its decision was based on not just the probation violations but rather on the entirety of youth's history and circumstances, including his need for stabilization.

Youth appeals the trial court's judgment committing him to OYA custody for placement in a close-custody facility, raising two assignments of error, (1) that the juvenile court erred by ruling that its order revoking youth's probation and authorizing his incarceration was not barred by ORS 419A.190, and (2) that the juvenile court erred by ordering that OYA was authorized to place youth in a youth correction facility under ORS 419C.495.

## II.   ANALYSIS

In his first assignment, youth argues that the juvenile court's judgment must be reversed because ORS 419A.190 prohibits successive dispositions arising out of the same conduct, therefore barring the juvenile court's order revoking youth's probation and authorizing his placement in the custody of OYA with a recommendation for close custody. The state responds that ORS 419A.190 applies only to subsequent "adjudicatory proceedings," not dispositional hearings, and therefore the juvenile court did not violate ORS 419A.190 by revoking youth's probation at the disposition

hearing. We examine the juvenile court's ruling applying ORS 419A.190 for legal error. *State v. G. E. S.*, 316 Or App 294, 297, 504 P3d 61 (2021).

We begin by providing a brief description of juvenile delinquency proceedings, which include "initiation, adjudication[,] and disposition" phases. ORS 419C.400. Initiation occurs "[w]hen a youth engages in conduct that would constitute a crime if committed by an adult" and the state petitions the juvenile court "to find the youth within its jurisdiction." ORS 419C.005 (providing juvenile courts with exclusive original jurisdiction of delinquency proceedings). The adjudication phase occurs when the court holds a hearing at which the state must prove the facts alleged in the petition beyond reasonable doubt. ORS 419C.400. If the juvenile court finds that the youth did engage in the conduct alleged, it finds the youth within its jurisdiction and enters a disposition order. ORS 419C.411. In determining the appropriate disposition, the juvenile court must consider factors listed in ORS 419C.411(3) and may consider additional factors listed in ORS 419C.411(4). In the disposition order, the juvenile court sets forth requirements and conditions that the youth must complete as part of the youth's rehabilitation. ORS 419C.440-419C.510 (setting out the types of dispositions and under what circumstances a court may impose them). Finally, ORS 419C.626 allows the juvenile court, either in response to an OYA report or on its own motion, to "hold a hearing to review the adjudicated youth's condition and circumstances and to determine if the court should continue jurisdiction over the adjudicated youth or order modifications in the custody, placement[,] and supervision."

The possible dispositions available to the juvenile court that are relevant to the case before us include orders of limited detention upon a probation violation, ORS 419C.453(1)(b); placement in the custody of OYA, ORS 419C.478(1); and recommendation for placement in a youth correction facility. ORS 419C.495(1). Under ORS 419C.453(1)(b), "pursuant to a hearing," when a youth violates a condition of formal probation, "the juvenile court may order an adjudicated youth placed in a detention facility for a specific period of time not to exceed eight days." Under ORS 419C.478, the

juvenile court may, "*in addition to probation or any other dispositional order*, place an adjudicated youth \*\*\* in the legal custody of [OYA] for care, placement[,] and supervision." ORS 419C.478(1) (emphasis added). When doing so, "the court may specify the type of care, supervision[,] or services to be provided by [OYA] \*\*\* but the actual planning and provision of the care, supervision, security[,] or services is the responsibility of [OYA]," and OYA "may place the adjudicated youth in a youth care center or other facility authorized to accept the [child]." ORS 419C.478(2). Finally, under 419C.495(1), a child that is placed in the custody of OYA "may be placed in a youth correction facility \*\*\* only when the juvenile court having jurisdiction so recommends."

Taken together, the statutory provisions clear the murk from the water in the case before us. Pursuant to a probation violation hearing, a juvenile court may order detention for up to eight days and, additionally, place the child in the legal custody of OYA, specifying the type of care or service to be provided, including a recommendation for close custody. ORS 419C.478(1) makes clear on its face that the juvenile court may place a child in the custody of OYA, specifying the type of care or services to be provided, "in addition to probation or any other dispositional order."

Turning more squarely now to the double-jeopardy argument, we first look at the statute. ORS 419A.190 provides, in relevant part:

"[P]roceedings in \*\*\* juvenile court adjudicatory proceedings based on an act alleged in a petition or citation to have been committed by a child, ward, youth or adjudicated youth or allegations arising out of the same conduct are barred when the juvenile court judge or referee has begun taking evidence in an adjudicatory hearing \*\*\*."

Youth relies primarily on *State v. S.-Q. K.*, 292 Or App 836, 426 P3d 659, *adh'd to as modified on recons*, 294 Or App 184, *rev den*, 364 Or 209 (2018), to argue that the juvenile court had "one shot" at choosing the correct disposition following the probation violation hearing, and that the 8-day detention followed by the revocation of probation and placement in OYA custody with recommendation for placement in a close-custody facility constituted two dispositions

for the same conduct in violation of 419A.190. In *S.-Q. K.*, we determined that a probation violation hearing was an adjudicatory proceeding of the type that would bar a subsequent adjudicatory proceeding for the same conduct, as contemplated by the legislature in enacting ORS 419A.190. 292 Or App at 845-46. The question in this case would then seem to be whether a "dispositional review hearing" is also an "adjudicatory hearing" that would be barred by the prior-jeopardy provision. However, upon reviewing *S.-Q. K.* and the statutory provisions applicable to this case, we have determined that this case does not require us to answer that question.

The case at hand is distinguishable from *S.-Q. K.* because of the differences between the nature of the proceedings in each case. In *S.-Q. K.*, the youth was subject to two separate and distinct proceedings resulting from two separate petitions—a probation violation proceeding to adjudicate an alleged violation of the youth's initial probation disposition, and, several weeks later, a new delinquency proceeding alleging conduct that would constitute disorderly conduct in the second degree. 292 Or App at 837-38. The state initiated each proceeding with separate petitions, each involving exactly the same conduct. *Id.* In the probation violation proceeding, the youth admitted to violating his probation due to being expelled from school due to participating in a fight. *Id.* at 837. In the subsequent delinquency proceeding, the state based its allegations on the same fight that led to the youth's expulsion. *Id.* at 838; *S.-Q. K.*, 294 Or App at 185. We held that each proceeding adjudicated separate allegations that were based on the same conduct and therefore that the subsequent proceeding was barred by the former jeopardy provision of ORS 419A.190. *S.-Q. K.*, 292 Or App at 848.

The case before us is different. While drawn out into three sessions over the course of four days, what occurred was essentially one hearing, consisting of two separate components, in response to a single petition. First, on March 14, 2023, there was the adjudicatory probation violation hearing where the juvenile court found facts pursuant to the probation violation petition filed by the state on March 8. Having concluded that two of the four allegations in the probation

violation petition had been sufficiently proven, the juvenile court entered a dispositional order of an 8-day detention, as allowed by ORS 419C.453(1)(b). The record shows that the juvenile court was then prepared to undertake a disposition review to decide appropriate placement, as allowed by ORS 419C.478(1). However, youth requested that the placement discussion be delayed so that youth's attorney could seek alternative placement options. That request was granted, and the parties were ordered to reconvene before the juvenile court on March 16. Youth's attorney not having found available alternative placement options, the juvenile court moved into the placement portion of the proceeding, which took place over the course of two consecutive days on March 16 and 17. The record shows that those proceedings were entirely focused on determining the appropriate placement for youth, considering his entire history following his initial disposition in April 2021, as well as the merits and obstacles of several potential placement options. The juvenile court then ordered placement of the youth in the custody of OYA with a recommendation for close custody. ORS 419C.478(1) explicitly allows for each of these determinations to occur. ORS 419C.478(1) (allowing the court to, "in addition to probation or any other dispositional order, place an adjudicated youth * * * in the legal custody of [OYA] for care, placement[,] and supervision"); *accord* ORS 419C.626(2) (allowing the court, on its own motion, to hold such a disposition review hearing "at any time.").

In its Judgment of Disposition Review and Judgment of Commitment to Oregon Youth Authority, entered March 17, the juvenile court, "consider[ing] the relevant facts and circumstances of the case," explained that placement in the legal custody of OYA with a recommendation for close-custody placement was appropriate because it was the "least restrictive under the present circumstances" for effective rehabilitation and because youth presents a risk to the community, as sex-offender treatment remained incomplete. *See* ORS 419C.478(1) (requiring the juvenile court to "include written findings describing why [placement in the custody of OYA] is in the best interests of the [child]").[4] ORS 419A.190

---

[4] Youth does not challenge the sufficiency of the court's findings under 419C.478(1). *See State v. E. J. R.*, 341 Or App 488, 576 P3d 1051 (2025) (describing requirements).

prohibits successive adjudications based on the same conduct, like those that occurred in *S.-Q. K.* Here, there was a single adjudication resulting in a dispositional order of detention, as well as a new placement decision based on the totality of the circumstances of the youth's case, as is expressly allowed by ORS 419C.478(1). We conclude that the juvenile court did not err in ruling that its order revoking probation and authorizing placement in OYA custody with a recommendation for close custody was not barred by ORS 419A.190.

As to youth's second assignment, youth argues that the juvenile court could not authorize OYA to place him in a youth correction facility under ORS 419C.495 because he did not meet the criteria for such placement under OAR 416-410-0060(5), which provides three criteria that must be met for OYA to place a youth in a youth correction facility. The state responds that the juvenile court had discretion to recommend placement in a close-custody facility upon a finding that such placement was in youth's best interests and that OAR 416-410-0060(5) does not limit the authority of the juvenile court to order close custody under ORS 419C.495(1). Alternatively, the state argues that the evidence supports a finding that the criteria of OAR 416-410-0060(5) were met in this case.

We review a juvenile court's decision to place youth in OYA custody for placement in a youth correctional facility for an abuse of discretion. *State v. N. K. H.*, 341 Or App 78, 79-80, 572 P3d 349 (2025). Under this standard, we will only reverse if the juvenile court's discretionary determination is not a legally permissible one. *Sjomeling v. Lasser*, 251 Or App 172, 187, 285 P3d 1116, *rev den*, 353 Or 103 (2012). An exercise of discretion is not legally permissible "if it is unjustified by, and clearly against, reason and the evidence." *State ex rel Juv. Dept. v. D. J.*, 215 Or App 146, 155, 168 P3d 798 (2007); *State v. Jones*, 141 Or App 41, 48, 917 P2d 515 (1996) (abuse of discretion occurs when the court's "discretion is exercised arbitrarily without reason or contrary to law"). Further, "an exercise of discretion that is founded on a legal error is an abuse of discretion." *Ferry v. Board of Parole*, 293 Or App 216, 221, 427 P3d 1123 (2018).

As discussed above, "in addition to probation or any other dispositional order," a juvenile court may "place an adjudicated youth in the legal custody of [OYA] for care, placement[,] and supervision." ORS 419C.478(1). In doing so, the juvenile court is required "to include written findings describing why it is the best interests of the adjudicated youth to be placed with [OYA]." *Id.* The "best-interests assessment is a child-focused consideration and must be child-centered." *State v. D. B. O.*, 325 Or App 746, 748, 529 P3d 1004 (2023) (internal quotation marks omitted). ORS 418C.478(5) prevents a juvenile court from directly committing a youth to a residential facility. *See also State v. B. Y.*, 371 Or 364, 377, 537 P3d 517 (2023) (characterizing ORS 419C.478(5) as an explicit limitation on juvenile court's discretion in determining appropriate dispositions). At the same time, "[a]n adjudicated youth placed in the legal custody of [OYA] may be placed in a youth corrections facility * * * only when the juvenile court having jurisdiction so recommends." ORS 419C.495(1). That requirement "embodies a legislative policy decision that Oregon juveniles will not be placed initially in youth correctional facilities without the affirmative recommendation of the juvenile court." *State ex rel Juv. Dept. v. Garcia*, 180 Or App 279, 286, 44 P3d 591 (2002).

For OYA to make a close-custody placement, OAR 416-410-0060(5) requires that an adjudicated youth:

"(a)   Displays serious and persistent criminal behavior;

"(b)   Displays a lack of responsiveness to the expectations of the court: and

"(c)   Cannot be safely served by available community resources, and is in need of a close-custody placement."

Youth acknowledges that OAR 416-410-0060(5) does not directly control the court's exercise of its discretion in recommending close custody. However, he argues that, in this case, the court abused its discretion because OYA's rule would not support placing him in close custody regardless of the court's recommendation. His view appears to be that the court's recommendation is futile if the rule is not satisfied

and, therefore, recommending close custody is necessarily an abuse of discretion in that circumstance.

The problem with youth's argument is that he has not identified any legal principle or case law suggesting that the court abuses its discretion if it makes a recommendation that, pursuant to agency rules, the agency cannot legally implement. From the authorities directing the court's discretion, it appears that, while a juvenile court may consider the three criteria of the regulation, nothing requires it to do so.

Here, the juvenile court, based on youth's circumstances since his initial disposition, determined that it was in youth's best interest to be place in OYA custody, with a recommendation for close custody, because youth needed to stabilize in order to complete sex offender treatment, had not adequately progressed in less restrictive programs, and could not be adequately served by other available programs or placements. As noted, youth does not challenge the sufficiency of the court's reasoning to explain why commitment to OYA custody was in his best interest. We disagree with his view that the court abused its discretion by failing to expressly apply the three factors set out in OAR 416-410-0060(5).

We conclude that the juvenile court did not err in determining that it was not barred by ORS 419A.190 from ordering an 8-day detention for the probation violation and also revoking youth's probation and placing youth in OYA custody and recommending placement in a close-custody facility. We further conclude that youth has not shown that the juvenile court abused its discretion when it placed youth in OYA custody and recommended youth be placed in a youth correction facility.

Affirmed.